7840

STATE v. DAVIS.

1. CONSPIRACY.—A combination of two or more persons to do an unlawful act, affecting an individual alone as distinguished from the public is a conspiracy.

2. PLEADINGS—INDICTMENT—MALICIOUS MISCHIEF—AUTOMOBILES.—Indictment for malicious mischief in injury to an automobile *held* to

state the offense within the provisions of section 56, of the Criminal Code.

3. CONSPIRACY—AUTOMOBILE.—Where three persons agree to unlawfully use the automobile of another without his consent, on trial under indictment for reckless driving, it is immaterial which one was driving the machine at the moment of collision.

4. IBID.—There was sufficient evidence of agreement in this case to carry the issue of conspiracy to the jury.

5. IBID.—EVIDENCE—DECLARATIONS.—After evidence of conspiracy, it is competent to prove the declarations of one of the conspirators subsequent to the ending of the transaction as against himself.

6. CHARGE—REASONABLE DOUBT.—The instruction in connection with the form of verdict, "You may find them all not guilty if the evidence satisfies you beyond a reasonable doubt that the State has failed to make out its case," when considered alone is error, but when considered with the whole charge on each count it is not probable the jury was misled.

7. SENTENCE.—Whether a sentence is excessive will not be considered by this Court if it is within the limits prescribed by law, or unless it is the result of partiality, prejudice, oppression or corrupt motive.

8. ATTORNEYS.—In order to warrant this Court to grant a new trial because of improper argument before the jury it should appear that the trial Court was requested to restrain or correct, and that the language used was so flagrant a breach of fair discussion as to make it an abuse of discretion in trial Court not to prevent or correct it. *Held* here that the solicitor's charging defendants with drinking, lying and being guilty was inferential from the record.

9. MALICIOUS MISCHIEF—AUTOMOBILES.—Driving an automobile on a public road in a furious manner regardless of the rights of the owner, and not caring if it is smashed up, and while so driving wrecking and breaking the car, makes out the crime of malicious mischief.

10. NEW TRIAL.—There is no error in trial Court requiring defendants' attorneys to argue a motion for a new trial immediately after it is made.

Before ALDRICH, J., Charleston, February term, 1910. Affirmed.

Indictment against Louis Davis, Henry Field and Robert Smith for conspiracy, larceny, malicious mischief and reckless driving. Defendants appeal.

*Messrs. Paul M. MacMillan* and *Geo. H. Momeier,* for appellants, cite: *The use of an auto without the consent of the owner is not the subject of a criminal indictment for conspiracy;* 2 Hill 282; 13 East 228; 11 S. C. 230. *Count charging malicious mischief is not good:* Bish. on Stat. Crimes, sec. 447; 54 S. C. 198; 14 S. C. 353; 10 Rich. 373; 1 Rich. 179; 2 N. & McC. 560. *The agreement was not proved:* 49 S. C. 422; 40 S. C. 330. *Argument of solicitor prejudiced:* 69 S. C. 76; 65 S. C. 248; 58 Mich. 248. *Malicious mischief defined:* 14 Rich. 249.

*Solicitor John H. Peurifoy,* contra.   Oral argument.

March 27, 1911.   The opinion of the Court was delivered by

Mr. Chief Justice Jones. The defendant, Louis Davis, was chauffeur for Dr. Edward F. Parker in the city of Charleston. On Saturday evening, January 29, 1910, Davis was directed to put the automobile in the garage and lock it up. This instruction was disregarded, and at 10:30 o'clock that night Davis drove the auto to a restaurant in the city and there met his chums, the defendants Henry Field and Robert Smith. After remaining at the restaurant until near 12 o'clock the defendants got into the auto and agreed to go out for a spin upon the Meeting Street Road, a public highway leading north from the city.

They soon overtook a wagon drawn by a horse and occupied by Edward Johnson and his little son on their way home from Charleston. Johnson hearing the approach of the machine, to get out of the way, drove the horse and wagon upon the trolley track running parallel with the highway, but the auto, going at a rapid speed, thirty-five to forty miles an hour, and wobbling from side to side of the road, according to Johnson's testimony, struck and demolished the wagon, knocking out the occupants, fortunately without serious injury, and was itself badly wrecked.

The defendants were indicted under four counts, the first charging conspiracy to do an unlawful act, the taking of the automobile and the gasoline in the tank for the use of defendants, without the knowledge and against the will of the owner, the second charging larceny of the gasoline consumed, the third charging malicious mischief in maliciously injuring the automobile, and the fourth charging reckless driving of an automobile upon the highway.

The jury were instructed to find a verdict of not guilty on the second count, larceny, which they did, but they found the defendants guilty on the first, third and fourth counts. The defendants were sentenced to imprisonment for five years.

Upon exception to refusal of the motion to quash the indictment and exception to the charge, appellants make the point that an indictment will not lie for criminal conspiracy to use the automobile of another without his consent. Contention is made that there can be no criminal conspiracy except (1) to commit an indictable offense, (2) to affect an object by indictable means, (3) to affect the community injuriously. This contention is not without authority, but we hold that the law in this State does not so restrict criminal conspiracy.

In *State* v. *Ameker,* 73 S. C. 338, 53 S. E. 484; the Court approved the following definition of conspiracy: "The combination of two or more persons to do something unlawful either as a means or as an ultimate end, *Com.* v. *Waterman,* 122 Mass. 43, or as remarked by the 6th A. & E. Ency., page 832. Conspiracy, therefore, is rather described than defined, and the description which seems to have the widest recognition and approval by the authorities declare a criminal conspiracy to consist of a combination between two or more persons for the purpose of accomplishing a criminal or unlawful object, or an object neither criminal nor unlawful by criminal or unlawful means." In *State* v. *Eastern Coal Co.,* 29 R. I. 254, 132 Am. St. Rep. 817, the Court

declared: "Criminal conspiracy is a combination to do something unlawful either as a means or an end." In 2 Bishop Crim. Law, par. 180, treating of conspiracy the author says: "The reader should bear in mind that unlawful means contrary to law, and many things are contrary to law while not subjecting the doer to criminal prosecution. Therefore in the language of Colkburn, C. J.: 'It is not necessary in order to constitute a conspiracy that the acts agreed to be done should be acts which if done would be criminal. It is enough if the acts agreed to be done although not criminal are wrongful, that is amounts to a civil wrong.'" In Clark's Criminal Law the author at page 119, says: "Most of the cases of conspiracy which arise are doubtless cases in which the acts contemplated are indictable either at common law, as in case of conspiracy to murder, rob, or cheat by false weights and measures, or under statutes, as in case of conspiracies to obtain property by false pretence; but according to the great weight of authority acts need not necessarily be indictable at all in order that a conspiracy to commit them may be criminal. It is sufficient if they are unlawful." Roscoe Criminal Evidence declares that a "conspiracy is an agreement between two or more persons to do that which is unlawful." While there is no statute making it criminal to use the automobile of another without his consent it was clearly unlawful to so use it, thereby subjecting him to injury by loss by consumption of gasoline and the wear and tear of the machine. Hence under the definition given, the offense was indictable. It is true the cases of conspiracy heretofore presented in this State involved some injury to the public, as a conspiracy to injure others by defeating the course of public justice through the destruction of a will, *State* v. *DeWitt,* 2 Hill; the extortion of a deed by perverting legal process, a peace warrant, as a means of accomplishment, *State* v. *Shoster,* 8 Rich. 72; a conspiracy to cheat and defraud the State, *State* v. *Cardoza,* 11 S. C. 195; a con-

spiracy to disturb the peace at a public picnic, *State* v. *Ameker*, 73 S. C. 332, 53 S. E. 484.

It is clear all these cases come within the law of conspiracy, but we do not understand these cases as restricting the law of conspiracy to unlawful acts which affect the community or public as distinguished from the individual.

The next contention is that the Court erred in not quashing the indictment as to malicious mischief on the ground that it was not alleged that the act was wilful and that the motive and cause of accusation was not fully alleged.

The indictment charged that on January 29, 1910, at Charleston, S. C., the defendants named "did wilfully, unlawfully and maliciously injure a certain automobile, the value of four thousand dollars, the injury amounting to five hundred dollars, of the proper goods and chattels of one Edward F. Parker against the form of the statute and etc."

The indictment was substantially in the language of the statute and sufficiently indicated the cause and nature of the accusation, within the provision of section 56, Criminal Code.

At the request of defendant's counsel the Court instructed the jury that in order to convict one of reckless driving they must be satisfied that the automobile was being driven by that person and by no other, because one cannot be guilty of reckless driving if he is not in control of the automobile. It is now claimed that the motion for new trial made in behalf of defendant Davis should have been granted because the jury disregarded the charge.

The witness Johnson testified that the right man (Louis Davis, the chauffeur) was not running the automobile at the time, and that after his wagon was struck as soon as he got up he saw Robert Smith still had the wheel in his hand. Smith denied this, stating that he could not drive

an automobile. The testimony shows that the three defendants agreed to take the automobile out on the highway for a ride and at that time Louis Davis was driving. Whether Davis or Smith was driving at the moment of the collision was not vital. Davis may have been instructing or aiding Smith, a novice, to run the machine, or Davis alone may have been engaged in manipulating it, but if the three defendants agreed to so use the machine in their joint enterprise, it was of no consequence which particular one was at the steering wheel.

Contention is made that there was no proof of agreement, which is the gist of the offense of conspiracy. We think there was some testimony of agreement sufficient to carry the case to the jury. Besides the circumstances relied on by the State, Henry Fields testified "When we got between Reid and Wolfe streets he (Davis) said we will take a little spin up the road, so we said all right, we could not get out and make him stop." Robert Smith testified at folio 122, "so we got in the car and came down King to John, John to Meeting street, and stopped at the corner of John and Meeting; then after thinking a moment he went on to Reid street, then he said boys I am going to take a ride a little way up the road, and we could not get out so I said all right, but as to making an agreement I don't know anything about that." This was at midnight after the social intercourse among these friends at the restaurant and they all knew that the car belonged to Dr. Parker. A few minutes after the wreck of the car these defendants talked together and one of them said to the other: "Well, boys, we cannot go any further. Will meet you tomorrow at 2 o'clock." The conductor of a car on the trolley line coming up very soon after the collision asked Davis what he was doing with Dr. Parker's machine at that time of night and Davis replied that Dr. Parker had sent him with a message to the Navy Yard, but he could not produce the message after an attempted search.

The circumstances all tended to show a concurrence of mind on the part of defendants to make unlawful use of the automobile.

In this connection we may consider the objection to the testimony of Dr. Parker as to admission made to him by Davis some days afterwards. There being some evidence of a conspiracy it was competent to prove the declaration of one of the conspirators subsequent to the transaction, as against himself. *State* v. *Green*, 40 S. C. 330, 18 S. E. 933.

While such testimony is not admissible against the other conspirators the point was guarded by the instructions to the jury that after a conspiracy is ended the declarations of one of the conspirators is not evidence against the others.

Exception is taken to the following charge: "You may find them all not guilty if the evidence satisfies you beyond a reasonable doubt that the State has failed to make out its case," the contention being that this shifted the burden of proof from the State and required defendants to prove their innocence beyond a reasonable doubt. If the charge is to be judged by this particular extract, it is subject to the criticism made, but if we view the charge as a whole, it very clearly appears that the Court instructed the jury that the State must prove the offense charged beyond a reasonable doubt. Charging specifically as to each offense alleged in the indictment the Court instructed that the State must prove its case beyond a reasonable doubt, and it is not probable that the jury were mislead by this language used by the Court when instructing as to the form of the verdict in view of the several counts.

It is excepted that imprisonment for five years in this case is excessive. We have repeatedly held that we have no jurisdiction to correct a sentence on this ground, provided it is within the limits prescribed by law for the discretion of the trial Court, and is not

the result of partiality, prejudice, oppression or corrupt motive. It is not even suggested that there was any such influences operating in this case.

The point is made that the argument of the solicitor was improper and prejudicial to the defendants and that a new trial should be granted on that ground.

The record shows the following: "In the course of his argument the solicitor used the following expressions, which were excepted to by counsel for defendants: "These defendants were at the eating-house from 10 o'clock to 12:15 o'clock and they were there drinking." "Gentlemen of the jury, I tell you these defendants were lying, etc." "They are guilty (objection noted). Yes, I submit they are as guilty as the devil."

In order to warrant this Court to grant a new trial because of improper argument before the jury it should appear that the trial Court was requested to restrain or correct, and that the language used was so flagrant a breach of fair discussion as to make it an abuse of discretion on the part of the trial Court to fail or refuse to interpose to prevent or correct it. *State* v. *Robertson,* 26 S. C. 118, 1 S. E. 446; *State* v. *Williamson,* 65 S. C. 248, 43 S. E. 671.

The statement of the solicitor that the defendants were drinking at the restaurant was an inference from the suggestion or statement in the testimony that the restaurant was a "blind tiger," from the reckless conduct of the defendants on that night and the testimony of Johnson whose wagon was smashed: "From the way they acted they ran over me after I was struck, it seemed as if they were drunk, because one of them, Robert Smith, offered to hit me and did hit me with a piece of the shaft." Hence it cannot be said that the solicitor was speaking out of the record in this matter. It would have been far better if the solicitor had not made use of the expressions charging the defendants with lying and declaring them guilty, etc., but after all this

was but an expression of opinion by the solicitor based upon his view of the testimony in the case, and we cannot say that the remarks were so materially prejudicial that it was abuse of discretion in the trial Court to refrain from interferring. In *Kirby* v. *Tel. Co.,* 77 S. C. 409, 58 S. E. 10, there was nothing in the record to sustain the remarks made by counsel.

The seventh exception complains of the charge as to malicious mischief made in these words: "So that if the proof in this case satisfies you beyond a reasonable doubt that these defendants on the occasion referred to, drove that automobile down that public road in such a furious manner, so regardless of the rights of the owner of it as not to know and not to care whether they smashed it up, and while so recklessly driving, it was wrecked and broken up, the law says they are presumed as intending to smash it up, because that is the reasonable consequence of their act, and if you are satisfied beyond a reasonable doubt that these facts existed, then they are guilty of the crime of malicious mischief;" the error being (a) that his Honor thus took from the jury the consideration of whether the conduct of the defendants was wilful, unlawful and malicious, all of which elements were necessary to make out the offense, and (b) his Honor thus charged on the facts, and directed the verdict of the jury. In *State* v. *Doig,* 2 Rich. 179, approved in *State* v. *Toney,* 15 S. C., the Court declared that "Malice is a term of art, implying wickedness and excluding a just cause or excuse. It is implied from an unlawful act wilfully done, until the contrary be proved." In an indictment for malicious mischief it is not necessary to show personal ill will against the owner of the property, but malice as an ingredient of the offense may be inferred from the wilful doing of an unlawful act without just cause or excuse, and both wilfulness and malice may be inferred when the unlawful act is done in such a wanton and reckless spirit as to show a mind

disposed to mischief. The charge was in harmony with this view, and was not a charge upon the facts.

It is finally contended that the Court erred in forcing counsel to argue the motion for new trial without preparation. Motion for new trial was made on the ground that the State had failed to make out a case of conspiracy. Counsel are supposed to be ready to argue a motion for new trial on the minutes when made, and there are good reasons for disposing of such motions while the proceedings and testimony are fresh in the mind. The time for arguing such motions is under the control of the Court and we cannot say there was error in this matter.

The exceptions are overruled and the judgment of the Circuit Court is affirmed.