14575

STATE v. WEEKS *ET AL.*

(194 S. E., 12)

*Messrs. L. D. Lide, T. B. Bryant, Jr.* and *Howard A. Jenkins,* for appellant, cite:

*Messrs. A. J. Hydrick, Solicitor, J. D. Parler* and *M. S. Connor,* for the State.

November 29, 1937.

• The opinion of the Court was delivered by Mr. Justice Baker.

The appellant, H. A. Weeks, and three others were tried at the April, 1937, term of the Court of General Sessions for Dorchester County, on an indictment on which the grand jury had returned a true bill at the April, 1935, term of Court, charging that on April 19, 1933, they did willfully, unlawfully, and maliciously cut, deface, mutilate, and injure certain trees of the value of $50.00, of the proper goods and chattels of one Chapman-Storm Lumber Company, a corporation, to its damage in the sum of $50.00. The appellant, H. A. Weeks, was by a jury convicted, and by the Court sentenced to the public works of Dorchester County, or a like period in the State penitentiary, for a period of three months, and pay a fine of $300.00.

From the judgment and sentence of the Court, the appellant appeals upon eleven exceptions, which raise the questions: Did the trial Judge err (a) in refusing a motion to direct a verdict of not guilty for that there was no evidence

that the trees were the property of the prosecutor, Chapman-Storm Lumber Company, or that it was in the possession of the real property from which they were cut; (b) in refusing to direct a verdict of acquittal for that there was no evidence of malice in the cutting of the trees, even had there been any competent evidence that the appellant cut the trees; and (c) in refusing to continue the case?

Under our view of the case, it will be necessary to discuss but one question; Was there any evidence of malice on the part of the appellant? The writer hereof prolongs the question on account of the disclosures in the record of the atmosphere surrounding the prosecution of this case. Let it be said that we have not the slightest criticism of the honorable and learned attorneys representing the respondent.

Under a written contract between Minnesota-South Carolina Land & Timber Company, the owner in fee simple of the tract of land from which the trees in question were cut, and Chapman and Storm, who subsequently assigned their contract to Chapman-Storm Lumber Company, the nominal prosecutor at the time this case was tried, the first-named corporation agreed to sell and the last-named corporation agreed to purchase, as and when cut, all of the merchantable timber on various tracts of land, including the land from or on which these trees were cut. While there was a cessation of operations under this contract, an unprecedented woods fire swept this entire section of the country, and Minnesota-South Carolina Land & Timber Company, the owner of the timber, notwithstanding its contract with the prosecutor in this case, undertook to salvage damaged trees, and employed appellant to remove such trees as were on the ground. During these removal operations, Chapman-Storm Lumber Company commenced a civil action against Minnesota-South Carolina Land & Timber Company and attached its property within this State. Just prior to, or about the time the attachment was served, the nine trees out of which this prosecution had its origin, were cut, alleged to be green trees

and undamaged, and appellant was engaged in hauling them, along with other trees to a sawmill.

When an agent came upon appellant engaged in loading these trees preparatory to hauling them to a sawmill, the appellant frankly admitted his purpose, admitted that the trees had been freshly cut, but denied all knowledge of who had cut them, and stated if there was going to be any trouble about his removing these or any other trees that were then on the ground, if it was going to involve him in a lawsuit, he would have nothing further to do with the removal thereof, and then and there desisted, although the agent of Chapman-Storm Lumber Company told appellant, "You need not stop because I just come over here to see what you are doing."

There is testimony that fire had been built on the top of the stumps from which these trees had been cut, and in the tree tops, but appellant denied any knowledge of who was responsible therefor. A witness for respondent testified that Ottie Green, one of the defendants, and an employee of appellant, told him that appellant "put the fire out." However, we are unable from the record to reach a conclusion if this statement by Green was made within the hearing of appellant; but giving him the benefit of the doubt, as we must do in a criminal prosecution, this was not testimony which can be considered against him.

There was no motion for a directed verdict of acquittal based on the failure of the evidence of the cutting of these trees by appellant, so we treat this case as though there were sufficient evidence of this fact requiring the submission thereof to the jury.

To justify a conviction under the statute on which the indictment was based (Section 1184, Code 1932), there must be evidence that the trees were cut willfully, unlawfully, and maliciously. The State must prove or put in evidence facts from which no other reasonable con-

clusion could be reached but that the accused had malice in his heart; was acting maliciously.

The Legislature was careful to guard against a too free resort to this statute by penalizing a prosecutor, in that if he brought a criminal prosecution he is debarred from bringing a civil suit for the same injury. See Section 1185, Code 1932.

Due to the unusual circumstances surrounding the cutting and removal of the trees in this case, it is more difficult to determine just what would constitute sufficient evidence to require the submission to the jury if the appellant acted maliciously than in the ordinary cases brought under Section 1184.

In *State v. Alexander,* 14 Rich., 247, 249, it is stated: "An Act may be unlawful and so involve legal responsibility without being either wilful or malicious, or it may be both unlawful and wilful without being malicious. * * * They constitute an ascending scale in culpability—a legal climax."

In *State v. Toney,* 15 S. C., 409, 412, Chief Justice Simpson, in writing the opinion of the Court, stated: "The terms used in the act under which these defendants have been indicted and convicted are 'unlawfully,' 'willfully' and 'maliciously.' These terms are not synonymous, and were not intended to express the same idea. They have each a different signification and import different degrees of guilt." He then quoted the foregoing excerpt from the opinion in the case of *State v. Alexander.*

In charging the jury, the trial Judge gave this definition of the word "malice": "Malice means the intentional and deliberate doing of a wrongful act, intending it to be wrong and committing that act without just cause of excuse. It indicated a heart fatally bent on mischief and denotes a depraved, malicious and wicked spirit."

We are of the opinion that the word "maliciously," as used in the statute, should be construed with a view to the popular conception of its meaning; that

is, that the cutting, mutilating, defacing, or the otherwise injuring of the real property of another has to be done from an innate or sheer meanness, and, as stated by the trial Judge, growing out of "a heart fatally bent on mischief," and the act must denote a depraved and wicked spirit; that it is the intent of the doer that some one suffer an unnecessary injury to his property.

In *State v. Davis,* 88 S. C., 229, 238, 70 S. E., 811, 815, 34 L. R. A. (N. S.), 295, it is stated: "In an indictment for malicious mischief it is not necessary to show personal ill will against the owner of the property, but malice as in ingredient of the offense may be inferred from the willful doing of an unlawful act without just cause or excuse, and both willfulness and malice may be inferred when the unlawful act is done in such a wanton and reckless spirit as to show a mind disposed to mischief."

And in the *Davis case,* quoting from *State v. Doig,* 2 Rich., 179, approved in *State v. Toney, supra:* "Malice is a term of art, implying wickedness and excluding a just cause or excuse. It is implied from an unlawful act willfully done, until the contrary be proved."

In the case at bar, the defendant-appellant was employed by the owner of the land to go thereupon and remove fallen trees, and those found cut, suitable for sawmill purposes. There is testimony that when he found these nine trees freshly cut (and there is no competent testimony that appellant either cut or had these trees cut), he reported this fact to one Joe Baker, the agent of the owner of the land, and requested instructions as to the removal thereof, and was told by Baker to remove them; that when the agent of the prosecuting company came to him while he was in the timberlands loading trucks with logs, and complained about these nine trees, he not only voluntarily offered to cease his operations, but did then and there stop, as has hereinbefore been stated. It would therefore appear that his acts and words on that occasion are in direct contradiction of any implica-

tion of malice raised by the unlawful and willful cutting of these trees, granting that the appellant unlawfully and willfully cut the trees.

While, as hereinabove stated, it is unnecessary to consider if the prosecutor in this case had such ownership or possession of these trees as to permit it to bring this prosecution, a careful reading of the contract discloses that it had not such ownership or possession, especially as against one acting under the instructions of the owner in fee of the land.

It is the opinion of this Court that the testimony in behalf of respondent did not warrant the submission to the jury of the case on the question of malice, and that it was error to refuse the motion for a directed verdict of acquittal.

Reversed and remanded for the purpose of entering judgment for defendant-appellant.

MR. CHIEF JUSTICE STABLER and MR. JUSTICE FISHBURNE concur.

MR. JUSTICE BONHAM concurs in result.

MR. JUSTICE CARTER did not participate on account of illness.