0696

James W. LEE, Jr., Respondent v. CHESTERFIELD GENERAL HOSPI-
TAL, INC. and James Madory, Appellants. Joseph K. NEWSOM, M.D.,
Respondent v. CHESTERFIELD GENERAL HOSPITAL, INC. and
James Madory, Appellants. JOSEPH K. NEWSOM, M.D., P.A., Re-
spondent v. CHESTERFIELD GENERAL HOSPITAL, INC. and James
Madory, Appellants.

(344 S. E. (2d) 379)

Court of Appeals

*William P. Griggs,* of *Griggs & Spruill,* Cheraw, and *G. Trenholm Walker,* of *Wise & Cole,* Charleston, *for appellants.*

*James R. Gilreath,* Greenville, and *James E. Redfearn,* Chesterfield, *for respondents.*

Heard Jan. 23, 1986.

Decided May 5, 1986.

BELL, Judge:

These actions arise from the refusal of Chesterfield General Hospital to permit James W. Lee, Jr., to perform certain medical procedures upon patients in the Hospital. Lee is a licensed physician's assistant employed by the professional association of Joseph K. Newsom, M.D. He enjoys staff privileges as a physician's assistant at the Hospital. Lee, Dr. Newsom individually, and Newsom's professional association commenced identical tort suits against the Hospital and its administrator alleging a conspiracy to injure the plaintiffs in their trade. The Hospital demurred to all three suits on the ground that they failed to state a cause of action. The cases were consolidated for a hearing on the demurrers. The circuit court held the complaints stated a cause of action for conspiracy and overruled the demurrers. The Hospital appeals. We affirm.

In considering a demurrer, the complaint must be liberally construed in favor of the pleader and sustained if the facts alleged and the inferences reasonably deducible there-

from entitle the plaintiff to relief on any theory of the case. *Christiansen v. Campbell,* 285 S. C. 164, 328 S. E. (2d) 351 (Ct. App. 1985). We agree with the circuit court that the complaints in these cases "are extremely prolix and contain much irrelevant, redundant, and evidentiary matter." Despite considerable defects in draftsmanship, however, we hold the complaints are sufficient to withstand a demurrer for failure to state a cause of action. .

According to the allegations of the complaints, Lee is a certified physician's assistant duly licensed by the State Board of Medical Examiners to perform a wide range of medical procedures under the supervision of a licensed physician. Newsom is a physician licensed to practice in South Carolina. Newsom's professional association employs Lee to assist Newsom in his medical practice in Chesterfield County. Both Newsom and Lee have been granted staff privileges by the Chesterfield General Hospital for a number of years.

In October 1982, pursuant to a notice from James Madory, the hospital administrator, Lee applied for reappointment to the Hospital's staff for the ensuing year. In his application, Lee sought approval to perform a long list of medical procedures on patients in the Hospital. These included procedures the Hospital had previously approved as well as a number of new procedures. Lee is licensed by the State Board of Medical Examiners to perform all the procedures in question.

In January 1983, the Credentials Committee of the Hospital reviewed Lee's application for reappointment. The Committee recommended Lee for staff privileges as a physician's assistant. However, it refused to approve some of the procedures Lee wished to be able to perform.

In February 1983, the Board of Trustees of the Hospital, acting on the recommendation of the Credentials Committee, granted Lee staff privileges as a physician's assistant subject to stated guidelines which restricted the tests and procedures he would be able to perform in the Hospital. The guidelines prohibited Lee from performing some of the procedures he had requested in his application and permitted him to perform certain other procedures only when Newsom was physically present and supervising Lee.

The complaints allege the restrictions in question were imposed on Lee as part of a conspiracy between Madory, the Hospital, and other members of the medical staff of the Hospital. The alleged purpose or object of the conspiracy is "to dominate the practice of medicine by licensed physicians in Chesterfield County" and "to restrain and eliminate, for their own financial advantage and professional enhancement, the element of fair competition" in the practice of medicine in Chesterfield County. The complaints allege that as a result of the conspiracy, Lee, Newsom, and Newsom's professional association have suffered damages, including mental anguish, loss of professional reputation, and loss of trade.

## I.

The Hospital first argues the demurrers should have been sustained because internal rules governing the practice of a physician's assistant in a private hospital are not subject to judicial review.

We agree that a private hospital is free, in the absence of controlling legislation or regulatory provisions, to decide the nature and extent of medical practice permitted to persons it grants staff privileges. Ordinarily, such decisions involve matters of expert medical judgment not subject to judicial review. *See Gowan v. St. Francis Community Hospital,* 275 S. C. 203, 268 S. E. (2d) 580 (1980), *cert. denied,* 449 U. S. 1062, 101 S. Ct. 786, 66 L. Ed. (2d) 605 (1980); *Hoffman v. Garden City Hospital-Osteopathic,* 115 Mich. App. 773, 321 N. W. (2d) 810 (1982). A medical professional has no right, simply because he is licensed by state authority to perform certain procedures, to claim unrestricted staff privileges in a hospital. *See Yeargin v. Hamilton Memorial Hospital,* 225 Ga. 661, 171 S. E. (2d) 136 (1969), *cert. denied,* 397 U. S. 963, 90 S. Ct. 997, 25 L. Ed. (2d) 255 (1970). Within the confines of the law, a hospital may set professional standards for staff according to its own conception of good medical practice.

These principles are not dispositive of the present cases, however. In ruling on the demurrers, the circuit court did not conduct a judicial review of internal hospital rules. The question to be decided is not whether the rules are valid or

reasonable or medically sound, but whether the rules were imposed in furtherance of a conspiracy, the primary purpose of which was to injure the plaintiffs. If the complaints, liberally construed, allege such a conspiracy, it is irrelevant that the Hospital has the legal right to restrict staff privileges and that its rules are not subject to judicial review.

## II.

The Hospital also argues that the complaints fail to state a cause of action because they do not allege any unlawful act by the defendants.

This argument confuses the elements of civil conspiracy with those of criminal conspiracy. A criminal conspiracy consists of "a combination between two or more persons for the purpose of accomplishing a criminal or unlawful object or an object neither criminal nor unlawful by criminal or unlawful means." *State v. Hightower*, 221 S. C. 91, 96, 69 S. E. (2d) 363, 365 (1952), quoting *State v. Davis*, 88 S. C. 229, 70 S. E. 811 (1911); *see also, Mulcahy v. Regina* (1868) L. R. 3 H. L. 306, 317 ("A conspiracy consists . . . in the agreement of two or more to do an unlawful act, or to do a lawful act by unlawful means"). To establish a criminal conspiracy it is not necessary to prove an overt act. The gist of the crime is the unlawful combination. The crime is then complete, even though nothing further is done. *State v. Ferguson*, 221 S. C. 300, 70 S. E. (2d) 355 (1952), *cert. denied*, 344 U. S. 830, 73 S. Ct. 35, 97 L. Ed. 646 (1952); *Todd v. South Carolina Farm Bureau Mutual Ins. Co.*, 276 S. C. 284, 278 S. E. (2d) 607 (1981).

A civil conspiracy, on the other hand, consists of three elements: (1) a combination of two or more persons, (2) for the purpose of injuring the plaintiff, (3) which causes him special damage. *Charles v. Texas Co. (Charles I)*, 192 S. C. 82, 5 S. E. (2d) 464 (1939); *Crofter Hand Woven Harris Tweed Co. v. Veitch (Crofters' Case)* [1942] A. C. 435; *Quinn v. Leathem* [1901] A. C. 495; *Hutton v. Watters*, 132 Tenn. 527, 179 S. W. 134 (1915); *cf., Pratt v. British Medical Association* [1919] 1 K. B. 244; *Thompson v. British Medical Association* [1924] A. C. 764. The gravamen of the tort is the damage resulting to the plaintiff from an overt act done pursuant to the combination, not the agreement or combina-

tion per se. *Todd v. South Carolina Farm Bureau Mutual Ins. Co., supra; see also Charles v. Texas Co. (Charles II)*, 199 S. C. 156, 18 S. E. (2d) 719 (1942). A civil conspiracy may, of course, be furthered by an unlawful act. *See, e.g., Charles v. Texas Co. (Charles II), supra* (slander, adulterating gasoline, etc.). However, an unlawful act is not a necessary element of the tort. An action for conspiracy may lie even though no unlawful means are used and no independently unlawful acts are committed.

In *Charles v. Texas Co. (Charles I), supra*, the plaintiff, a distributor of petroleum products, brought an action for conspiracy against the Texas Company, one Ezelle, a zone manager for the company, and Lynch, the plaintiff's former business partner in the petroleum trade. Charles alleged the defendants, from motives of "envy, ill will, spite and malice," entered into a combination, scheme and conspiracy with the purpose, design and intent of wrecking his business. In furtherance of the conspiracy, Lynch had first dissolved their former partnership to force Charles out of the petroleum trade. When Charles set up a competing distributorship, the defendants then engaged in a course of unfair competition to ruin his business. Among other things, Charles alleged that the defendants sold petroleum products and filling station equipment to his customers at below market price to induce them to discontinue the use and sale of Charles's products.

The defendants moved to strike these allegations from the complaint, arguing that Lynch had a legal right to dissolve the partnership and that they had a right to sell their petroleum products to whom they chose at any price they saw fit. Since these alleged overt acts were lawful, the defendants argued, the complaint stated no ground of legal liability against them. The trial judge denied the motion to strike.[1]

On appeal, the Supreme Court sustained the trial judge's ruling. The Court held that even an act which is lawful can be a ground of liability if it is done in furtherance of a conspiracy:

---

[1] Charles also alleged other overt acts by the defendants sounding in trespass, fraud, defamation, and duress. These unlawful overt acts were not in issue on the motion to strike or on appeal.

> The defendants may have had a right to sell to anyone their products at such prices as they saw fit, but if this was done in furtherance of a conspiracy to injure and damage the plaintiff the allegation would be pertinent and relevant on that issue.

192 S. C. at 100, 5 S. E. (2d) at 472. In so holding, the Court rejected the defendants' position that liability for the tort of conspiracy cannot be grounded on a lawful act. Because a lawful act may be actionable if done in furtherance of a conspiracy to injure, the allegations in issue were not subject to a motion to strike. *Accord, Charles v. Texas Co. (Charles II), supra* (where an act done by an individual, though harmful to another, is not actionable because justified by his rights, yet the same act becomes actionable when committed in pursuance of a combination of persons actuated by malicious motives); *Howle v. Mountain Ice Co.*, 167 S. C. 41, 165 S. E. 724 (1932) (rejecting rule that an act done by two or more persons in pursuance of an agreement is not actionable though resulting in damage if a like act done by one person alone would not be actionable).

The same rule was applied in *Quinn v. Leathem, supra.* In that case the plaintiff Leathem was a wholesale butcher and the defendants were trade union officials. Wishing to insure that Leathem should employ union labor exclusively, the union officials demanded that he dismiss his non-union employees and replace them with union men. Leathem was unwilling to discharge his non-union men, some of whom had served him for many years and had large families to support. Instead, he offered to pay their initiation fees and dues to make them union members. The union officials rejected this offer. They then approached one Munce, a retail butcher and customer of Leathem, and induced him to cease trading with the plaintiff, which he was legally free to do. They also persuaded several men to leave Leathem's employ without breaching any contract. Leathem alleged these acts were done in furtherance of a conspiracy to injure him in his trade.

The House of Lords sustained a jury verdict against the union officials, rejecting the argument that the defendants could only be liable if some conduct were proved which

would have been actionable without the conspiracy or combination. Lord Macnaghten approved the view that

> a conspiracy to injure might give rise to civil liability even though the end were brought about by conduct and acts which by themselves and apart from the element of combination or concerted action could not be regarded as a legal wrong.

[1901] A. C. at 510. Lord Brampton agreed, stating:

> [i]f they are sufficient to accomplish the wrongful object of [the conspiracy], it is immaterial whether singly those acts would have been innocent or wrongful, for they have in their combination brought about the intended mischief, and it is the wilful doing of that mischief, coupled with the resulting damage, which constitutes the cause of action, not of necessity the means by which it was accomplished.

*Id.*, at 530.

From these authorities it may be seen that the essential consideration is not whether lawful or unlawful acts or means are employed to further the conspiracy, but whether the primary purpose or object of the combination is to injure the plaintiff. "A combination of two or more persons wilfully to injure a man in his trade is unlawful and, if it results in damage to him, is actionable." *Sorrell's Case* [1925] A. C. 700, 712 (per Lord Cave, L. C.).

Applying this principle to the cases before us, it is not necessary for the complaints to allege an unlawful act in order to state a cause of action. Accordingly, the circuit court correctly overruled the demurrers on this ground.

### III.

The Hospital next argues that the complaints fail to state a cause of action because Madory, the hospital administrator, is legally incapable of conspiring with his employer, the Hospital. This argument rests on the proposition that a corporation, as a legal person in contemplation of law, cannot conspire with itself. *See Anderson v. Southern Ry. Co.*, 224 S. C. 65, 77 S. E. (2d) 350 (1953); *Goble v. American Railway Express Co.*, 124 S. C. 19, 115 S. E. 900 (1923); *cf.*,

*Buckner v. Lower Florida Keys Hospital District,* 403 So. (2d) 1025 (Fla. App. 1981).

In this case, however, the complaints allege that ■ Madory and the Hospital conspired with "other members of the medical staff." Since the agents of a corporation are legally capable, as individuals, of conspiracy among themselves or with third parties, the complaints are sufficient to withstand a demurrer on this ground. *See Goble v. American Railway Express Co., supra* (agents of corporation may conspire among themselves) (dictum).

## IV.

Finally, the Hospital argues that the actions by Newsom and his professional association should be dismissed because they lack standing to complain of a conspiracy to injure Lee.

In order to have standing to sue, a party must have a personal stake in the subject matter of the lawsuit. *Duke Power Co. v. South Carolina Public Service Commission,* 284 S. C. 81, 326 S. E. (2d) 395 (1985). One with a financial interest in a controversy ordinarily will have standing to sue. *Cf., Furman University v. Livingston,* 244 S. C. 200, 136 S. E. (2d) 254 (1964).

The complaints of Newsom and the professional asso-■ ciation in effect allege that the conspiracy against Lee has caused them pecuniary loss by restricting the services Lee can perform for his employer. This is a sufficient allegation of financial interest in the controversy to give Newsom and the professional association standing to sue. The Hospital's argument is, therefore, without merit.

## V.

The Hospital briefs additional arguments which we need not address, since none would be grounds for sustaining the demurrers even if the Hospital's position is correct. Insofar as these arguments attempt to address the merits of the case or the remedy to be granted, they are premature at this stage of the litigation.

We emphasize that in affirming the ruling of the circuit court we hold only that the complaints are sufficient to state a cause of action for conspiracy. Whether the plaintiffs will be able to prove the conspiracy is, of course, a matter we do not decide.

For the reasons stated, the order of the circuit court overruling the demurrers is

Affirmed.

SANDERS, C. J., and GARDNER, J., concur.