**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

ANTHONY WHITFIELD, d/b/a Whitfield
Realty,
                    *Plaintiff-Appellant,*

                    v.

JOHN BOURNE COMPANY; JOHN
BOURNE, JR.; JOHN BOURNE, III;
MARY BOURNE BOS; DPS
ASSOCIATES OF CHARLESTON,
INCORPORATED, a/k/a ReMax
Professional Realty; DAVID WERTAN;
FRED RICE; BULWINKLE REAL ESTATE
COMPANY, INCORPORATED; CARSON J.
BULWINKLE; MERYL BULWINKLE;
LETTY PARRISH; FIRST COASTAL
PROPERTIES; MORRIS BOURNE; MORRIS
BOURNE ASSOCIATES; CANDACE N.
PRATT;
                    *Defendants-Appellees,*

                    and

UNITED STATES OF AMERICA,
                    *Movant-Appellee,*

                    and

EVE OLASOV,
                    *Defendant.*

GEORGE VESSELL,
                    *Movant.*

No. 99-1010

Appeal from the United States District Court
for the District of South Carolina, at Charleston.
Solomon Blatt, Jr., Senior District Judge.
(CA-94-939-2-8)

Argued: September 28, 2000

Decided: July 26, 2001

Before NIEMEYER and MICHAEL, Circuit Judges, and
Frederick P. STAMP, Jr., Chief United States District Judge
for the Northern District of West Virginia,
sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Kerry Warren Koon, Charleston, South Carolina, for
Appellant. William Howell Morrison, MOORE & VAN ALLEN,
P.L.L.C., Charleston, South Carolina, for Appellee. **ON BRIEF:**
Rebecca Guental Fulmer, Desa Ann Rice Ballard, DESA BALLARD,
P.A., West Columbia, South Carolina, for Appellant. Richard C.
Burke, MOORE & VAN ALLEN, P.L.L.C., Charleston, South Caro-
lina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

   Appellant Anthony Whitfield ("Whitfield") brings this appeal pur-
suant to 28 U.S.C. § 1291 (1986). Appellant Whitfield, doing busi-
ness as Whitfield Realty, brought this action in April 1994 against
John Bourne Company, John Bourne, Jr., John Bourne, III, Mary
Bourne Bos, DPS Associates of Charleston, Incorporated a/k/a

ReMax Professional Realty ("ReMax"), David Wertan, Fred Rice, Bulwinkle Real Estate Company, Incorporated, Carson J. Bulwinkle, Meryl Bulwinkle, Letty Parrish, First Coastal Properties, Morris Bourne, Morris Bourne Associates, Candace N. Pratt and the United States of America (collectively referred to as "appellees"), alleging that the appellees have engaged in a variety of activities constituting unfair trade practices, antitrust violations, negligence and conspiracy resulting in an unfair and illegal manipulation of the process of resale of properties previously repossessed by the Department of Veterans Affairs.

On appeal, appellant Whitfield alleges that the district court committed reversible error when it granted summary judgment to all appellees on the basis of its ruling that Whitfield's evidence of damages was too speculative to support a jury verdict. Appellant also appeals the grant of summary judgment by the district court to all appellees on the claim for civil conspiracy on the basis of its ruling that Whitfield was required to demonstrate that the appellees conspired for the purposes of injuring Whitfield in particular and on Whitfield's cause of action seeking injunctive relief under the Sherman Antitrust Act. Appellant also appeals the grant of summary judgment in favor of ReMax, David Wertan, Fred Rice, Letty Parrish, First Coastal Properties, Morris Bourne, Morris Bourne Associates, and Candace Pratt (collectively "referral appellees") on the unfair trade practices claim on the basis of its ruling that Whitfield has failed to demonstrate that the actions of those appellees were capable of repetition and on the negligence claim on the grounds that those appellees owed Whitfield no duty. Further, Whitfield alleges that the district court erred in failing to require appellees John Bourne Company and Bulwinkle Real Estate Company to disclose their customers who purchased homes from the Department of Veterans Affairs, in failing to require appellees David Wertan and Fred Rice to produce their personal bank account records, and in granting the motion by the United States Department of Veterans Affairs to quash appellant's subpoena for records pertaining to the investigation of Property Management Brokers by the Office of Inspector General. Appellees respond that the district court committed no reversible error when it granted summary judgment in favor of the appellees and that the district court did not abuse its discretion in denying Whitfield's discovery requests. For the reasons stated below, we affirm.

I.

The Department of Veterans Affairs ("DVA") is involved in the resale of properties because, as a benefit to veterans, the DVA will often cosign a note with a veteran enabling the veteran to obtain financing to purchase real estate. If the veteran defaults on the note, the DVA will satisfy the mortgage and acquire title to the real estate. The DVA then attempts to resell the property. When properties are acquired by the DVA, they are assigned to the supervision of various property management brokers ("PM brokers"). The PM brokers provide the DVA with many services, including securing, winterizing, maintaining, and preparing the properties for resale. The PM brokers also deal with subcontractors who do various inspections and repairs as directed by the DVA. In addition, the PM brokers provide the DVA with a valuation opinion of the property that assists the DVA in setting the asking price for the property. Although the PM brokers are compensated for the services they provide to the DVA, they are also real estate companies or professionals and are able to earn commissions on real estate transactions handled successfully for their real estate clients.

After a property is prepared for sale, the DVA "lists" the property for sale by newspaper advertisement. The listing is the first announcement to other realtors and to the public of the availability and price of the property. After the listing, the DVA accepts purchase offers for a limited time, often ten days. The highest bidder purchases the property subject to DVA approval and the minimum price. During the offer period, any licensed real estate professional can submit an offer to the DVA on behalf of a prospective purchaser. Upon closing of the sale, the real estate professional representing the successful purchaser earns up to a six percent sales commission paid by the DVA. PM brokers are permitted to seek to earn the DVA-paid commission by representing purchasers for properties under their management, subject to certain rules.

Appellees John Bourne Company and Bulwinkle Real Estate Company ("appellee PM brokers") have served as PM brokers in three South Carolina counties since 1987, except for the period from April 1, 1993 until October 1, 1994 when the John Bourne Company had the exclusive contract. While the John Bourne Company had the

exclusive contract, it issued a memorandum to all real estate brokers in the tri-county area, including appellant Whitfield, advising them of the contract with the DVA. The property management contract between the DVA and the John Bourne Company contained the following provision:

> The contractor [the John Bourne Company], members of his/her business organization and member of his/her immediate family or household are prohibited from selling VA properties managed under this contract during the first fifteen days of initial listing.

Additionally, the contract included an "anti-kickback" provision that prohibited the contractor [PM broker] from receiving things of value from any person providing services under their contract with any subcontractors or prospective subcontractors. "Subcontractor" is defined as any person other than the contractor "who offers to furnish or furnishes any supplies, materials, equipment, or services of any kind under a prime contract or a subcontract" entered into with the contractor.

Appellant Whitfield is a real estate broker that specializes in the resale of DVA properties, as well as in the resale of other government properties, including properties under the management of the Department of Housing and Urban Development ("HUD") and the Home Owners Assistance Program ("HAP"). Appellant alleges that the PM brokers, in the course of performing their duties, acquired confidential information concerning DVA properties that was not readily available to Whitfield or to other real estate professionals competing in the market. Appellant further alleges that this confidential information gave the PM brokers an inherent advantage and that the John Bourne Company and Bulwinkle Real Estate Company used such "insider information" to the detriment of the appellant and other realtors in the Charleston area. Specifically, appellant alleges that John Bourne Company and Bulwinkle Real Estate Company disclosed confidential information on matters from pest inspections to system checks calculated to allow their clients a better opportunity than others to present a winning bid. Appellant also alleges that the appellee PM brokers posted unauthorized signs on DVA properties advertising the appellee PM brokers's own services as sales representatives, showed proper-

ties to prospective purchasers prior to the listing of those properties in violation of DVA policy, and, in at least one case, represented the existence of a secret contract in the DVA office through which confidential information could be obtained. Moreover, appellant alleges that the John Bourne Company entered into improper agreements that referred confidential information and clients to the referral appellees for fees in violation of the contract with the DVA and to the detriment of appellant.

Appellant Whitfield alleges that this unfair competition cost him business and profits and, therefore, appellant brought this civil action against the appellees in the district court. The district court granted a stay so that arbitration could be pursued, but vacated that stay when it became apparent that arbitration was not possible. Appellant filed an amended complaint and a second amended complaint. During the course of discovery, appellant sought the names of those purchasing DVA properties through the John Bourne Company and Bulwinkle Real Estate Company and the personal bank account records from certain referral appellees, but those discovery requests were denied by the district court. Appellees then filed motions for summary judgment. The district court granted summary judgment to all appellees on appellant's causes of action for civil conspiracy, under the Sherman Act Sections I and II, for Sherman Act injunctive relief, under RICO, and for breach of fiduciary duty. The district court also granted summary judgment on appellant's causes of action for negligence and for violation of the South Carolina Unfair Trade Practices Act ("SCUTPA") in favor of referral appellees. The district court also granted all appellees summary judgment on the grounds "that the Plaintiff's evidence of damages proximately resulting from the alleged conduct of any Defendant was entirely speculative and could not serve as the basis of a jury verdict in this case." The district court also granted the government's amended motion to quash a subpoena for records of the DVA office of the Inspector General. Finally, the district court denied appellant's motion to alter or amend the judgment. Appellant timely filed his notice of appeal before this Court.

## II.

On appeal, a district court's decision to grant summary judgment is subject to *de novo* review. *See Sheppard & Enoch Pratt Hosp., Inc.*

*v. Travelers Ins. Co.*, 32 F.3d 120, 123 (4th Cir. 1994); *Myers v. Finkle*, 950 F.2d 165, 167 (4th Cir. 1991).

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party seeking summary judgment bears the initial burden of showing the absence of any issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). However, as the United States Supreme Court noted in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986), Rule 56(e) itself provides that "a party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial — whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250; *see also Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979) (Summary judgment "should be granted only where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." (citing *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir. 1950))). In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## A.

Appellant Whitfield contends that the district court erred when it granted summary judgment on the basis of its ruling that Whitfield's evidence of damages was too speculative to support a jury verdict. Whitfield argues that the evidence proves that he lost commission income of at least $347,500.00 between 1987 and 1996. Appellant also argues, in the alternative, that his loss can be reasonably calculated at $167,500.00 under a more conservative method. Appellant Whitfield further contends that he lost at least $89,998.00 in promo-

tional expenditures in competing for sales of DVA properties that were sold through the wrongful activities of the appellees. Appellant argues that, because the appellees' wrongful conduct has limited his ability to prove damages, he should be held to a lower standard of certainty when proving damages. Appellees respond that appellant's evidence of damages is speculative because it is predicated upon assumptions and questionable probabilities. Appellees further argue that appellant's evidence of damages is flawed because of several factors, including fluctuation in the markets, failure to account for spikes in the number of home sales due to military base closings, and the flat assumption that each sale made by the appellees in the markets came at the direct expense of Whitfield. Moreover, appellees assert that appellant has misconstrued applicable case law and the "reasonable certainty" standard.

The most recent clarification of South Carolina's standard for recovery of lost profits comes in *Global Prot. Corp. v. Halbersberg*, 503 S.E.2d 483 (S.C. Ct. App. 1998). The *Global* court reiterated:

> The law does not require absolute certainty of data upon which lost profits are to be estimated, but all that is required is such reasonable certainty that damages may not be based wholly upon speculation and conjecture, and it is sufficient if there is a certain standard or fixed method by which profits sought to be recovered may be estimated and determined with a fair degree of accuracy.

*Id.* at 487 (citing *Beck v. Clarkson*, 387 S.E.2d 681, 684 (S.C. Ct. App. 1989) (quoting *South Carolina Fin. Corp. of Anderson v. West Side Fin. Co.*, 113 S.E.2d 329 (S.C. 1960))). The crucial requirement is that lost profits be "established with reasonable certainty." *South Carolina Fin. Corp.*, 113 S.E.2d at 336. The *Global* court also found:

> Proof may be established through expert testimony, economic and financial data, market surveys and analyses, business records of similar enterprises, comparison with profit performance of businesses similar in size, nature and location, comparison with profit history of plaintiff's successor, comparison of similar business owned by plaintiff himself,

and use of economic and financial data and expert testimony.

503 S.E.2d at 487 (citing *Drews Co. v. Ledwith-Wolfe Assocs.*, 371 S.E.2d 532 (S.C. 1988)). South Carolina courts have referred to the method of proving profits by comparing businesses similar in size, nature, and location as the "yardstick" method. *See Drews Co.*, 371 S.E.2d at 536.

Appellant Whitfield asserts that his lost income in the DVA market may be measured by the "yardstick" method by comparing the parties' performances in the HAP and HUD markets. Appellant Whitfield has testified that the DVA, HAP and HUD sales programs are similar in that: (1) the purpose of each is to facilitate the resale of homes by a government agency; (2) homes are sold on the limited initial bid period (ten or twenty days) with a first-come-first-served procedure after that initial bid period; (3) each program pays similar rates of commission (five percent or six percent) with the entire commission going to the selling broker and (4) each program keeps repair and pest inspection reports confidential from bidders. Whitfield offers several facts in support of his calculation of losses:

> (1)   During 1993 and 1994, when only the Bourne Company served as PM broker, Bulwinkle's sales declined from 60 properties in 1992 to 23 properties in 1993 and to 21 properties in 1994. Once Bulwinkle was reinstated as a PM broker in 1995, Bulwinkle's sales increased to 51 for 1995.

> (2)   In the HUD and HAP programs in which appellant alleges Bourne and Bulwinkle companies enjoyed no advantage, Whitfield sold 81 homes from 1993 until 1998, while Bulwinkle sold 19 homes and Bourne sold seven homes for the same period. In the HUD program, Whitfield sold 20 HUD homes, Bulwinkle sold 18 homes and Bourne sold six homes in total for the years 1992, 1995, 1996 and 1997.

> (3)   From 1987 to 1995, in the DVA program, Bulwinkle sold 286 DVA homes and Whitfield sold 147 homes.

Based upon that information, appellant Whitfield estimates that he lost at least 139 sales over the period and, at an average commission of $2,500.00 per sale, he lost $347,500.00 in commission income. Appellant contends that on the basis of these market comparisons, a jury could reasonably conclude that but for the appellees' unfair activities in selling DVA properties, Whitfield's DVA sales would have at least equaled the DVA sales of Bulwinkle and Bourne. Applying the "yardstick" method, appellant believes that a reasonable jury could find that he lost $347,500.00 in commission income between 1987 and 1996.

Applying the reasonable certainty test, this Court cannot find that appellant Whitfield has presented evidence of damages that could support a jury verdict. A "yardstick" comparison between the DVA, the HUD and the HAP markets does not allow this Court to reasonably calculate damages. Although the markets are in a similar location, they are of a different size and nature that make them difficult to compare. Moreover, appellant has not considered and accounted for the differences inherent in the markets in his comparison. Appellant makes general comparisons between the number of sales in the DVA, HAP and HUD markets, but the disparity in sales numbers could be explained by many reasons other than any unfair practices by appellees in the DVA market. Appellant has failed to establish any way in which the efforts and performance of appellant and the appellees in their respective markets were comparable. Moreover, the disparity in sales is not necessarily attributed to the actions of appellees. There are other realtors and agencies involved in the sale of properties and it is not a viable assumption that each and every sale by the appellees worked to the disadvantage and at the expense of appellant.

Although appellant relies on *Global* as an example of market comparisons, the facts in that case were different. In *Global*, a manufacturer of condoms was permitted to compare sales in two nearly identical markets to show the losses it sustained when another company distributed glow in the dark condoms, an identical product, in wrapping identical to that of the plaintiff. 503 S.E.2d at 487. In the *Global* case, the markets were nearly identical because both comprised large coastal vacation destinations. Additionally, the nearly identical nature of the products on the market permitted an easier comparison as well.

Even if the "yardstick" method applied in this case, appellant's numbers and estimates do not prove damages to a reasonable certainty. Statistics are not sufficient alone to establish damages in this case. *See Palmetto State Med. Ctr., Inc. v. Operation Lifeline*, 117 F.3d 142, 149 (4th Cir. 1997) (finding evidence of damages to be speculative and insufficient as a matter of law to establish financial losses without an inquiry into the correlation between statistics and the conduct of a defendant). Moreover, appellant relies on a handwritten chart detailing DVA sales commissions and estimated loss of market share from the alleged unfair practices. Appellant Whitfield admitted at his deposition that the document was put together quickly and may be flawed and based on certain estimates. This Court also questions the use of the statistics to demonstrate loss of expected market share because it is difficult to determine whether appellant Whitfield would have gained a measurable amount of market share had there been no referral agreements in place.

In the alternative, appellant Whitfield also seeks to prove lost profits by comparing the profit history of similar businesses that he has conducted. Accordingly, Whitfield points to his involvement in the HAP market. During appellant Whitfield's three and one half year experience in the HAP market, he had an average of 23 HAP sales per year, but averaged only 16.3 DVA sales per year between 1987 and 1996. Appellant believes that under "conservative" methodology, that evidence demonstrates that he should have a larger number of sales in the DVA market and that he lost at least $167,500.00 in commission income due to the unfair conduct of appellees.

The comparison of the profit history of Whitfield's involvement in the HAP market does not establish damages to a reasonable certainty. Appellant Whitfield's three and one half year experience with the HAP market, although similar in sales procedure to that of the DVA market, is not comparable because of fluctuation in the real estate market and the influence of the glut of housing placed on the market due to the Charleston naval base closure. Moreover, on a base level, statistics from a three and one half year specialized market with fluctuations are too tenuous to compare to the ten-year DVA market.

Appellant also seeks recovery for lost profits and loss of benefit of promotional expenditures. Whitfield asserts that he lost $23,023.00

for advertising and $3,225.00 for courier services, postage, express mail, and credit report fees in submitting offers on properties. Appellant further asserts that he has lost money for photographing properties and for long distance telephone calls as well as the benefit of his own time invested in training agents who left his employ as a result of the improper conduct of the PM brokers which he values in excess of $63,750.00. Again, appellant cites the *Global* case in which the court held that an award of lost profits was not the full measure of Global's damages and permitted promotional costs and costs associated with developing and marketing its product. 503 S.E.2d at 488. As the appellees point out, however, *Global* involved a trademark infringement and the *Global* court's determination that "recoverable damages include compensation for all injury to plaintiff's property or business which is the nature and probable consequence of defendant's wrong" is limited to trademark infringement cases. *Id.* Because appellant has presented this Court with no authority supporting the extension of South Carolina law governing the relatively narrow field of recoverable trademark infringement damages to the instant facts, appellees are still entitled to summary judgment on this issue.

Finally, appellant argues that he was "hampered" in his proof of damages by the wrongful conduct of the appellees and that he should be held to a lesser standard. Appellant relies on *Minter v. Goct, Inc.*, 473 S.E.2d 67 (S.C. Ct. App. 1996). In *Minter*, this Court stated:

> Where the wrongful act of the defendant is of such nature as to prevent determination of the exact amount of damages, the defendant is not allowed to insist on absolute certainty, but only that the evidence show lost profits by reasonable inference.

*Id.* at 70 (quoting 22 Am. Jur. 2d *Damages* § 177 (1965)). Although that case permitted an inference of damages, that holding is not at odds with determining damages by a "reasonable certainty" but reaffirms that each case should be considered on an individual basis. *Minter* also reiterates that "while proof with mathematical certainty is not required, the amount of damages cannot be left to conjecture, guess, or speculation." *Id.* In this case, appellant has not been able to prove damages to a reasonable degree of certainty and much has been

left to conjecture, guess and speculation. Accordingly, this Court upholds summary judgment in favor of all appellees.

## B.

Appellant Whitfield also contends that the district court erred when it granted summary judgment to appellees on the claim for civil conspiracy on the basis of its ruling that Whitfield was required to demonstrate that appellees conspired for the purpose of injuring Whitfield in particular. Under South Carolina law:

> Civil conspiracy . . . consists of three elements: (1) a combination of two or more persons, (2) for the purpose of injuring the plaintiff, (3) which causes him special damage.

*Lee v. Chesterfield Gen. Hosp., Inc.*, 344 S.E.2d 379, 382 (S.C. Ct. App. 1986). Moreover, "[a] conspiracy is actionable only if overt acts pursuant to the common design proximately cause damage to the party bringing the action." *Future Group, II v. Nationsbank*, 478 S.E.2d 45, 51 (S.C. 1996).

Although appellant Whitfield contends that South Carolina law does not require that a defendant have the specific intent to injure a particular plaintiff in civil conspiracy, appellant has presented this Court with no supporting South Carolina authority. Instead, appellant cites antitrust cases, such as *Blue Shield of Virginia v. McCready*, 457 U.S. 465 (1982), for the proposition that a plaintiff does not have to prove he is the "target" of a conspiracy. This Court does not find appellant's attempt to parallel antitrust law and South Carlina conspiracy law to be persuasive, particularly in light of the plain language of various South Carolina cases holding that the purpose of a civil conspiracy must be "injuring *the plaintiff* thereby causing *him* special damage." *Future Group*, 478 S.E.2d at 50 (emphasis added). Moreover, South Carolina case law reflects that there must be specific intent to injure a particular plaintiff. *Id.* at 51 (finding that a civil conspiracy claim could not be maintained against defendant, in part, because defendant did not even know of plaintiff's existence in relation to its actions); *Lee*, 344 S.E.2d at 382-83 (examining cases in which primary purpose or object of conspiracy was to injure particu-

lar plaintiff). Therefore, this Court upholds the grant of summary judgment on this issue.

## C.

Appellant Whitfield contends that the district court erred in granting summary judgment to referral appellees on the unfair trade practices claim on the basis of its ruling that Whitfield has failed to demonstrate that the actions of the referral appellees were capable of repetition. Under South Carolina law, an unfair trade practice must have adverse affects on the public interest. *See Daisy Outdoor Adver. Co. v. Abbott*, 473 S.E.2d 47, 49 (S.C. 1996). One method of showing an adverse affect on the public interest is by proof that the unfair practice has a potential for repetition. *Id.*; *Haley Nursery Co. v. Forrest*, 381 S.E.2d 906, 908 (S.C. 1989). A party may argue that an action is capable of repetition:

> (1) by showing the same kind of actions occurred in the past, thus making it likely they will continue to occur absent deterrence, or (2) by showing the company's procedures create a potential for repetition of the unfair and deceptive acts.

*Daisy Outdoor*, 473 S.E.2d at 51 (cites omitted); *see Crary v. Djebelli*, 496 S.E.2d 21, 23 (S.C. 1998). Those are not, however, the only means for showing potential repetition and each case must be evaluated on its own merits. *Id.*

Although appellant argues that the alleged referrals and "kickbacks" in this case occurred far more frequently than the two "similar acts" in *Daisy Outdoor*, this Court does not find that appellant has established that appellees' alleged acts have an adverse affect on the public interest. In *Daisy Outdoor*, the two incidents in which a billboard was blocked by a competitor's billboard clearly showed a potential for repetition and a likelihood that such actions may occur in the future absent deterrence. 473 S.E.2d at 51. In this case, even if this Court accepted that there were multiple instances of referrals and kickbacks, appellant has not shown that such unfair practices would continue absent deterrence or that any company's procedures created a potential for repetition of the alleged unfair and deceptive

acts. The referral agreement complained of by appellant has expired and the rules governing DVA homes have been changed to preclude such arrangements in the future. Although there may be other methods to show adverse affect on the public interest or other methods to show a potential for repetition, appellant has not presented this Court with any evidence that would lead this Court to find that appellant has properly alleged an unfair trade practices claim against referral appellees. Accordingly, this Court upholds the grant of summary judgment on this issue.

D.

Appellant Whitfield contends that the district court erred in granting summary judgment to referral appellees on the negligence claim on the ground that they owed no duty to Whitfield. Appellant argues that he can maintain a negligence action against the referral appellees because the referral appellees have a duty to him arising from their referral contract with John Bourne Company. Specifically, appellant contends that there was a genuine issue of fact that it was foreseeable that the referral agreement would proximately cause harm to appellant Whitfield.

The question of whether a defendant owes a duty, the breach of which may constitute negligence, is, however, a question of law, not of fact. *See Araujo v. Southern Bell Tel. and Tel. Co.*, 351 S.E.2d 908, 910 (S.C. 1986). In this case, appellant Whitfield is not a party to any contract between referral appellees and John Bourne Company and there is no statute from which a duty could conceivably arise. Moreover, this Court cannot find that Whitfield is a third-party beneficiary of any referral agreement. Although appellant does argue that this Court could construe a duty based upon the forseeability of harm to him under these circumstances, appellant has presented this Court with no supporting authority. Rather, the cases cited by appellant in support of extending a duty of care involved special relationships between parties that are significantly different than the relationship between the parties in this case.* In the absence of cited authority,

---

*In *Jensen v. Anderson County Dep't of Soc. Servs.*, 403 S.E.2d 615 (S.C. 1991), the South Carolina court dealt with the narrow area of child

appellant has not persuaded this Court to take action that would define a new duty under negligence law. Accordingly, this Court upholds the grant of summary judgment on this issue.

E.

Finally, appellant alleges that the district court erred in granting summary judgment on Whitfield's cause of action seeking injunctive relief under the Sherman Antitrust Act. Section 16 of the Clayton Act, 15 U.S.C. § 26, empowers a court of the United States to grant injunctive relief against threatened loss or damage caused by a violation of the "antitrust laws." *See T.S. Alphin v. Henson*, 552 F.2d 1033, 1034 n.1 (4th Cir. 1977). Antitrust law is defined by the Clayton Act to include the Sherman Act. *Id.* at 1034. Although appellant argues that the record discloses sufficient evidence to create a genuine issue of material fact as to threatened injury, this Court does not find that appellant has shown reoccurring or repetitive acts of anti-competitive activity or the threat of such activity that would support an injunction. Accordingly, this Court upholds the award of summary judgment to all appellees on this issue.

III.

When reviewing a district court's discovery rulings, this Court has held that:

> If the claim is of error in underlying factfinding which infected the ultimate decision, review must proceed under the clearly erroneous standard; if of error of law infecting the ultimate decision, under the *de novo* review standard. Only if the claim of error goes exclusively to the impropri-

---

welfare cases and an assumed public duty by officials involved in such cases. *Barker v. Sauls*, 345 S.E.2d 244 (S.C. 1986), permitted an employee to sue his employer's insurance broker regarding coverage that had a direct affect on the employee. Finally, appellant cites *Terlinde v. Neely*, 271 S.E.2d 768 (S.C. 1980), which dealt with the extension of warranties on a property.

ety of an ultimate exercise of available discretion is review solely under the abuse of discretion standard.

*See Watson v. Lowcountry Red Cross*, 974 F.2d 482, 485 (4th Cir. 1992) (citing *United Food & Commercial Workers v. Marval Poultry Co.*, 876 F.2d 346, 351 (4th Cir. 1989)).

A.

Appellant Whitfield alleges that the district court erred in failing to require appellee PM brokers to disclose the identity of purchasers of DVA properties sold by them during the relevant period, particularly given the district court's ruling on damages. Appellant Whitfield sought the names of the individuals who had purchased DVA properties through the appellee PM brokers so that appellant could determine whether those purchasers had received "insider information" concerning the DVA properties that enabled them to submit a winning bid. Appellant also argues that the information would enable him to collect more information regarding any wrongdoing on behalf of appellees and to more exactly determine and prove damages. Appellees resisted appellant's attempt to discover such information and argued that appellant had presented no need for that information and no proof of damages that would permit appellant to discover such information or that would outweigh the privacy interests of the appellees and their clients. The district court extensively examined the discovery issues during several hearings. After weighing the prejudice and privacy interests of the appellees against the possible prejudice to the appellant, the district court determined that such information was not discoverable because there would be prejudice to appellees in disclosing the names and because appellant had made no showing of injury.

On appeal, appellant again argues that he requires the purchasers' names to verify that appellees committed the unfair acts alleged in the complaint. Appellant also argues that the information would be necessary at trial to assist in showing damages. Appellees respond that appellant has raised no issue or facts on appeal that would reveal an abuse of discretion on the part of the district court.

This Court cannot find that the district court abused its discretion or committed any error. Although appellant cites *Palmetto State Med.*

*Ctr., Inc. v. Operation Lifeline*, 117 F.3d 142 (4th Cir. 1997), in support of his argument that the district court's ruling was extremely prejudicial in light of the district court's holding that appellant's evidence of damages was too speculative to support a jury verdict, that case is inapposite. Although the *Palmetto* case discusses the necessity of certain witnesses, the case does not address discovery or discovery disputes. Appellant has presented this Court with no authority nor with any argument that the district court abused its discretion or that the district court erred in any way. Accordingly, the district's court decision not to permit discovery of the purchasers' names is affirmed.

B.

Appellant Whitfield asserts that the district court erred in failing to require appellees, David Wertan and Fred Rice, to produce their personal bank account records. Because a memorandum was circulated reminding various appellee real estate agents that all referral fees should be deposited in appropriate accounts, appellant sought to discover those personal bank account records to determine whether some referral fees did not go through the appropriate accounts. The district court held a hearing with the parties and addressed the matter. Appellees argued that such discovery was unnecessary and intrusive based upon other discovery that had been completed by the appellant. The district court did not permit the discovery of the bank accounts because it determined that there were less intrusive means to discover the information.

On appeal, appellant contends that the discovery of bank account records is a routine matter and necessary in this case. Appellant alleges that he has been prejudiced by the district court's decision because his ability to prove injury and resulting damages has been curtailed. Again, appellees respond that appellant has produced no facts or issues on appeal that reveal or address any abuse of discretion on the part of the district court.

After examining the hearing transcript, this Court cannot find that the district court abused its discretion or erred in any manner. The memorandum reminding appellees about appropriate deposit of fees is not necessarily evidence that there had been inappropriate deposits. Moreover, appellant deposed certain witnesses who stated that no fees

were channeled into inappropriate accounts, that appellant possessed canceled checks revealing the appropriate deposit of the fees, and that appellant could seek additional canceled checks for verification. Appellant was permitted several avenues to determine whether any fees were deposited into inappropriate accounts and has not shown that he was unduly prejudiced. The district court was not in error and did not abuse its discretion when it defined the bounds of discovery on this issue. Therefore, the district court's ruling prohibiting discovery of the bank account records is affirmed.

## C.

In appellant Whitfield's statement of issues presented for review, appellant alleges that the district court erred in granting the amended motion of the DVA to quash appellant's subpoena for records of the DVA Office of Inspector General's investigation of property management brokers. This issue is not, however, reflected in the table of contents and is not discussed in the text of appellant's brief, appellees' brief or appellant's reply brief. Although this Court notes that the district court addressed this issue during the February 25, 1998 hearing with the parties, this Court will not address the merits of this issue because it has not been argued by the parties.

*AFFIRMED*