735 S.E.2d 518

**BENEDICT COLLEGE, Respondent,**

v.

**NATIONAL CREDIT SYSTEMS, INC., Christopher Rehkow, and Eric Dean Snyder, Appellants,**

v.

**Darren L. Ford, individually, and Leonard Williams, individually and in his representative capacity on behalf of Benedict College, Third Party Defendants,**

**Of whom Leonard Williams is also a Respondent.**

Appellate Case No. 2010–174166.

No. 5043.

Court of Appeals of South Carolina.

Heard April 4, 2012.

Decided Oct. 24, 2012.

540

J. Charles Ormond Jr., of Holler Dennis Corbett Ormond Plante & Garner, of Columbia, for Appellants.

Charles T. Speth II and Douglas J. Rosinski, of Ogletree Deakins Nash Smoak & Stewart PC, of Columbia, for Respondents.

THOMAS, J.

National Credit Systems, Inc. (NCS) appeals the dismissal of its counterclaim for civil conspiracy. NCS argues the circuit court erred in (1) finding it failed to state a claim upon which relief could be granted and (2) failing to provide an opportunity to amend its pleading. We reverse.

**FACTS**

On May 8, 2007, Benedict College entered into an Amended and Restated Mortgage and Security Agreement (the Security Agreement) with its lenders in exchange for a loan of $8.4 million. Among other restrictions, the Security Agreement required the College to obtain the written approval of its bond insurer, Radian Asset Assurance, before selling its portfolio of certain student loans.

On May 18, 2007, the College and NCS entered into an agreement under which NCS would attempt to collect those student loans on behalf of the College (the Collection Agreement). Leonard N. Williams, the College's Interim Chief Financial Officer, signed on behalf of the College, and sales representatives Darren L. Ford and Eric Dean Snyder signed on behalf of NCS. The College did not secure Radian's approval before executing the Collection Agreement.

In 2008, the College filed an action against NCS for breach of contract, fraud, fraud in the inducement, and unjust enrichment. Following procedural matters and the addition of other parties, NCS counterclaimed against the College for breach of contract and civil conspiracy.

NCS's breach of contract claim asserted the College breached the Collection Agreement by failing to provide the number of accounts agreed to under its provisions, settling or deferring certain accounts directly with debtors, and failing to remit money due to NCS as a result of its collection efforts. The contract claim further alleged NCS had suffered actual and consequential damages "[a]s a direct and proximate result of these breaches of the Collection Agreement."

NCS also counter- and cross-claimed for civil conspiracy against Williams, Ford and the College. The civil conspiracy claim alleged the following [1]:

> Williams was an agent of the College and at all times had the authority to act on its behalf. Ford worked as an independent contractor sales trainee for NCS, and he arranged the potential deal between the College and NCS through prior relationships he maintained with people at the College. In May 2007, the College and NCS executed the Collection Agreement. However, the College did so without obtaining the prior approval of its bond insurer, Radian, which was required by the Security Agreement. NCS did not know the College had failed to obtain the required pre-approval of the Collection Agreement before executing it. Williams subsequently sought Radian's approval of the Collection Agreement. However, he provided Radian with an unsigned copy of the Collection Agreement without men-

---

1. These block paragraphs do not quote the pleading unless indicated by quotation marks.

tioning it had already been entered. Radian rejected the Collection Agreement, and Williams contacted NCS's principals for "clarification" of the Collection Agreement's terms. NCS's principals did not "agree to modify or alter the terms of the Collection Agreement."

"[B]ecause NCS management ... would not agree [to] modifications of the terms of the Collection Agreement, which ... Radian was requiring of [the College] in order for Radian to provide its written consent ..., Williams pursued other means." Williams obtained a document from Radian's and the College's counsels with terms acceptable to Radian—the Addendum. He then presented the Addendum to Ford. Ford lacked express, implied or apparent authority to sign the Addendum for NCS, and Williams knew Ford's limitations. Nevertheless, Williams and Ford signed the Addendum without providing a copy to NCS. The Addendum removed or altered many provisions in the Collection Agreement designed to protect NCS, including a guaranteed refund provision that would effectively limit NCS's contractual liability to $255,000. Under the Addendum, NCS's liability could reach $1,020,000.

After the Addendum was executed, the College paid NCS, and NCS provided services to the College, in accordance with the Collection Agreement. NCS continued to lack knowledge of the Addendum while providing those services, and the allegations do not indicate when NCS first learned of the Addendum. However, the College eventually initiated the current lawsuit seeking payment pursuant to the Addendum's guaranteed refund provision.

Williams and Ford executed the Addendum "conspiring and intending to unilaterally alter the terms of the guarantee provisions in the Collection Agreement with the specific intent of harming NCS by way of purportedly binding it to contractual terms and guarantee provisions, to which NCS had not agreed." Moreover, "the joint discussions between Williams and Ford were made with the intent to maliciously injure and harm NCS and to further their own motives and objectives." Lastly, "[t]he acts of Williams, Ford, and [the College] ... directly and proximately resulted in special and additional damages to NCS, which include, but are not

limited to, the costs and attorney's fees associated with the defense of [the College]'s allegations."[2]

Williams and the College filed a motion to dismiss NCS's civil conspiracy cause of action under Rule 12(b)(6), SCRCP, arguing NCS failed to adequately plead two of the three elements of civil conspiracy: intent to harm and special damages. After arguments, the circuit court granted the motion. The court found NCS failed to allege Williams and Ford intended to harm NCS. It also found NCS failed to assert any special damages, specifically reasoning "costs and attorney's fees are not special damages" and the damages NCS sought to recover for civil conspiracy were the same damages it claimed for breach of contract. This appeal followed.

## ISSUES

1. Did the circuit court err in finding NCS failed to state a claim for civil conspiracy?

2. Did the circuit court err in failing to provide NCS an opportunity to amend its pleadings?

## STANDARD OF REVIEW

 Under Rule 12(b)(6), SCRCP, a defendant may move for the dismissal of a complaint on the basis that the plaintiff "fail[ed] to state facts sufficient to constitute a cause of action." In evaluating a motion to dismiss pursuant to this rule, the circuit court must view the facts alleged in the complaint and any reasonable inferences to be drawn therefrom in the light most favorable to the plaintiff. *Gentry v. Yonce*, 337 S.C. 1, 5, 522 S.E.2d 137, 139 (1999). If those facts and inferences would entitle the plaintiff to relief on any theory, then a dismissal for failure to state a claim is improper. *Hackworth v. Greywood at Hammett, LLC*, 385 S.C. 110, 115, 682 S.E.2d 871, 874 (Ct.App.2009). On appeal, the appellate court applies the same standard of review as the circuit court. *Doe v. Marion*, 373 S.C. 390, 395, 645 S.E.2d 245, 247 (2007). A complaint should not be dismissed merely because doubt exists that the plaintiff will ultimately prevail. *Id.* at 395, 645 S.E.2d at 248.

---

2. NCS also raised a third-party claim solely against Ford, but neither party has discussed that claim as it relates to the issues on appeal. We accordingly do not consider it.

## ANALYSIS

### I. Dismissal of the Civil Conspiracy Claim

NCS argues the circuit court erred in dismissing its civil conspiracy claim. Specifically, NCS asserts the circuit court erred in finding NCS failed to (1) allege Williams and Ford intended to harm NCS and (2) raise sufficient claims for special damages. We agree.[3]

■ "The tort of civil conspiracy has three elements: (1) a combination of two or more persons, (2) for the purpose of injuring the plaintiff, and (3) causing plaintiff special damage." *Hackworth*, 385 S.C. at 115, 682 S.E.2d at 874 (citing *Vaught v. Waites*, 300 S.C. 201, 208, 387 S.E.2d 91, 95 (Ct.App.1989)).

#### A. *Intent to Harm*

■ On appeal, NCS contends the circuit court erred in finding no allegation of intent to harm NCS because the complaint asserts Williams and Ford conspired to alter the terms of the Agreement and purport to bind NCS to those terms. We agree.

■ In a civil conspiracy claim, injury to the plaintiff need not be the only purpose behind the tortfeasor's conduct; many conspiracies will be at least partly motivated by the tortfeasor's desire to protect or benefit the tortfeasor's own lot. To be actionable, therefore, a conspiracy's "primary purpose or object" must be "to injure the plaintiff." *Lee v. Chesterfield Gen. Hosp., Inc.*, 289 S.C. 6, 13, 344 S.E.2d 379, 383 (Ct.App. 1986); *see also Pye v. Estate of Fox*, 369 S.C. 555, 567, 633 S.E.2d 505, 511 (2006).

Viewed in the light most favorable to NCS, the allegations can reasonably be interpreted to mean Williams and Ford signed the Addendum with the primary purpose to eventually induce NCS to follow the Addendum's guaranteed refund provision without realizing the Addendum was unenforceable. Although it is clear that Williams and Ford may have signed the Addendum at least partly to protect the College from a claim by Radian, the specific intent alleged by NCS's pleading

---

3. In holding the circuit court erred in dismissing the civil conspiracy claim, we again consider only those arguments raised to us.

explicitly states they acted to "harm[ ] NCS by way of purportedly binding" NCS to terms the company had not agreed to. As interpreted, therefore, NCS's allegations satisfy the requirement that the conspiracy's "primary purpose" was "to injure the plaintiff." Thus, the circuit court erred in dismissing the claim on this basis.

## B. *Special Damages*

NCS contends the circuit court also erred in dismissing its claim for failure to allege special damages. We agree.

### 1. *Allegations of Special Damages*

■ NCS argues the circuit court erred in finding the costs and attorney's fees sought under the civil conspiracy claim were not special damages. NCS contends these items did not overlap with the damages sought under its breach of contract claim against the College and are otherwise special damages. We agree.

■ Unlike other torts, an action for civil conspiracy requires the tortious conduct in question to cause the plaintiff special damage. *Hackworth*, 385 S.C. at 115, 682 S.E.2d at 874. While general damages "are the immediate, direct, and proximate result of the" tortfeasor's conduct, special damages "are the natural, but not the necessary or usual, consequence of the" tortfeasor's conduct. *Id.* at 116–17, 682 S.E.2d at 875. Moreover, dismissal of a claim for civil conspiracy is appropriate when "a plaintiff merely repeats the damages from another claim instead of specifically listing special damages as part of their civil conspiracy claim." *Id.* at 117, 682 S.E.2d at 875.

Here, the damages NCS sought under the civil conspiracy claim did not overlap with the damages sought under its breach of contract claim against the College. Under its civil conspiracy claim, NCS sought to recover "the costs and attorney's fees associated with the defense of [the College]'s allegations." In its breach of contract claim, NCS sought consequential damages that were "a direct and proximate result of th[e College's] breaches of the Collection Agreement." The contract claim further enumerated the College's breaches of the Collection Agreement, and the breaches did not relate to Williams and Ford's conspiracy. Thus, while the contract

claim could be construed to seek the costs and attorney's fees NCS incurred to prosecute the College's alleged breaches of the Collection Agreement, it could not be construed to seek the costs and fees NCS incurred in defending against the College's claims. Accordingly, the circuit court erred in finding NCS's civil conspiracy claim sought the same damages as its breach of contract claim.

Moreover, the costs and attorney's fees incurred by NCS in defending the College's claims for payment pursuant to the Addendum's guaranteed refund provision were not the immediate, direct result of Williams and Ford's alleged intent that NCS abide by the Addendum without realizing it was unenforceable. A lawsuit brought by the College against NCS to obtain payment of the Addendum's guaranteed refund would have been foreseeable if NCS determined it was not bound by the Addendum. Yet under the pleadings, the College would know through Williams that the Addendum was unenforceable because Williams knew Ford lacked authority to sign it. *See Sheek v. Lee*, 289 S.C. 327, 328, 345 S.E.2d 496, 497 (1986) ("General damages are those which must necessarily result from the wrongful act upon which liability is based.... 'Damages for losses that are the natural and proximate, but not the necessary, result of the'" tort are special damages (quoting *Hobbs v. Carolina Coca–Cola Bottling Co.*, 194 S.C. 543, 549, 10 S.E.2d 25, 28 (1940)); *Hackworth*, 385 S.C. at 115–17, 682 S.E.2d at 874–75 (providing that special damages "are the natural, but not the necessary or usual, consequence of the defendant's conduct" (citing *Loeb v. Mann*, 39 S.C. 465, 469, 18 S.E. 1, 2 (1893)). Thus, the conspiracy would not have necessarily or usually resulted in the College's lawsuit, and the costs and fees sought by NCS would be special damages caused by Williams and Ford's combination.

2. *Specificity of Special Damages Allegation*

■ As an additional sustaining ground, the College contends the circuit court's dismissal of NCS's civil conspiracy claim should be affirmed because the claim failed to allege special damages in accordance with Rule 9(g), SCRCP. We disagree.

Rule 9(g) provides, "When items of special damage are claimed, they shall be specifically stated." This rule is based upon the distinction between general and special damages. "General damages are inferred by the law itself, as they are the immediate, direct, and proximate result of the act complained of." *Hackworth,* 385 S.C. at 116–17, 682 S.E.2d at 875. In contrast, special damages are not implied by law because they "are the natural, but not the necessary or usual, consequence of the defendant's conduct." *Id.* Thus, special damages must "be specifically stated" to avoid surprise to the other party. *Preferred Sav. Bank, Inc. v. Elkholy,* 303 S.C. 95, 99, 399 S.E.2d 19, 21 (Ct.App.1990) (discussing Rule 9(g)); *see also* Rule 9 notes (providing that Rule 9(g) mirrors the substance of South Carolina practice prior to the adoption of our rules); *Sheek,* 289 S.C. at 328–29, 345 S.E.2d at 497 (discussing case law prior to our current rules of procedure and stating that "[s]pecial damages ... are not implied by law because they do not necessarily result from the wrong. Special damages must be alleged in the complaint to avoid surprise to the other party" (citation omitted)).

NCS has alleged special damages with sufficient specificity to satisfy our rules of civil procedure. NCS's pleading asserts the College "initiated this lawsuit seeking payment of a guaranteed amount pursuant to the terms of the purported Addendum to the Collection Agreement." The civil conspiracy claim then explicitly incorporates that assertion[4] and limits the special damages it seeks to "the costs and attorney's fees associated with the defense of [the College]'s allegations." Taking this language together, NCS does not assert amorphous or unlimited grounds for special damages.[5] The language provides sufficient specificity to inform the College, Williams, and Ford of a limited number and type of sources

---

4. NCS lists the alleged facts underlying its claims in a separate section of its pleading, and NCS's civil conspiracy claim explicitly incorporates these allegations. Therefore, any discussion of NCS's claim should consider those allegations as well. *See* Rule 10(c), SCRCP ("Statements in a pleading may be adopted by reference in a different part of the same pleading. . . . ").

5. In fact, the language thus excludes any costs or attorney's fees incurred in the prosecution of its own claims for breach of contract against the College under the Collection Agreement.

from which the alleged special damages are being sought. In light of the pleading, therefore, Rule 9(g) does not require that NCS separately identify which exact causes of action its pleading is referring to so long as it seeks only those costs and fees incurred in defending the College's claims seeking payment under the Addendum's guaranteed refund provision. The pleading protects the College from the surprise contemplated by Rule 9(g), and the circuit court erred in dismissing NCS's claim pursuant to that rule's requirements. Rule 9 notes, SCRCP (providing that Rule 9(g) mirrors the substance of the Federal Rules of Civil Procedure); 22 Am. Jur. *Damages* § 631 (2011) ("[T]he allegation of special damages [under Federal Rule 9(g) ] is sufficient when it notifies the defendant of the nature of the claimed damages even though it does not delineate them with as great precision as might be possible or desirable."). Whether the items sought are in-fact special damages is a separate question.

### 3. *AJG Holdings LLC v. Dunn* [6]

The College argues our decision in *AJG Holdings LLC v. Dunn* is controlling. We disagree.

In *AJG Holdings*, the circuit court granted summary judgment against the appellants' civil conspiracy claim. 392 S.C. at 168, 708 S.E.2d at 223. In the opinion, we explained the appeal's procedural posture in the following manner:

> In their pleadings, the Dunns allege that Respondents conspired "for the purpose of injuring [the Dunns] and such conspiracy has resulted in special damages, insofar as [the Dunns] have lost the quiet use and enjoyment of their property, have suffered damage to their reputations in the community, as well as other injury in an amount to be proven at trial." At the summary judgment hearing, the circuit court pointed out that these damages were no different from the damages alleged in the Dunns' other causes of action. At that point, the Dunns argued that their payment of attorney's fees and costs constituted special damages. Every litigant represented by a lawyer incurs attorney's fees and costs. However, the Dunns never pointed out to the circuit court specific attorney's fees or costs they con-

---

6. 392 S.C. 160, 708 S.E.2d 218 (Ct.App.2011).

tended qualified as special damages, nor did they seek permission to amend their counterclaim to include the specificity required by Rule 9(g). In granting summary judgment, the circuit court noted the damages the Dunns alleged did not "go beyond the damages alleged in other causes of action."

*Id.* We subsequently affirmed the circuit court "[b]ecause the Dunns failed to plead a sufficient claim for special damages unique to the civil conspiracy claim." *Id.* We explained that the damages actually pled in the Dunns' civil conspiracy claim could not constitute special damages because appellants conceded they were no different than the damages sought in another of their claims. *Id.* We declined to address the Dunns' argument that the circuit court erred in finding their allegations of costs and attorney's fees were insufficiently specific under Rule 9(g) because the Dunns raised an argument on appeal that was different from the argument presented below. *Id.*

*AJG* does not control this case. Unlike in *AJG*, NCS actually alleged costs and attorney's fees as special damages, and those damages did not overlap with NCS's breach of contract damages. Moreover, while this court in *AJG* refused to address whether the costs and fees alleged as special damages in that case were sufficiently specific to satisfy Rule 9(g), we hold the allegations of special damages in this case do satisfy the rule.

## II. Amendment of the Complaint

Because we find the circuit court erred in dismissing NCS's civil conspiracy claim, we need not reach this issue. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (ruling an appellate court need not review remaining issues when its determination of a prior issue is dispositive of the appeal).

## CONCLUSION

We find the circuit court erred in dismissing NCS's civil conspiracy claim, and as a result, we reverse the dismissal.

**REVERSED.**

WILLIAMS, J., and CURETON, A.J., concur.