# The Supreme Court of South Carolina

Leisel Paradis, Petitioner,

v.

Charleston County School District, James Island Charter
High School, Robert Bohnstengel and Stephanie Spann,
in their individual capacities, Respondents.

Appellate Case No. 2018-002025

---

## ORDER

---

After careful consideration of the petition for rehearing, the Court is unable to
discover that any material fact or principle of law has been either overlooked or
disregarded, and hence, there is no basis for granting a rehearing. Consequently,
the petition for rehearing is denied. However, for clarification, a new footnote 9
has been added in the attached opinion, which is substituted for the previous
opinion, and the previous opinion is withdrawn.

s/ Donald W. Beatty                          C.J.

s/ John W. Kittredge                         J.

s/ Kaye G. Hearn                             J.

s/ George C. James, Jr.                      J.

I stand by my original writing, but I do not believe my differences with the majority warrant the granting of rehearing.  I vote with the majority, therefore, to substitute the revised majority opinion and refile.

s/ John Cannon Few          J.


Columbia, South Carolina

August 18, 2021

# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Leisel Paradis, Petitioner,

v.

Charleston County School District, James Island Charter High School, and Robert Bohnstengel and Stephanie Spann, in their individual capacities, Respondents.

Appellate Case No. 2018-002025

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal from Charleston County
J.C. Nicholson Jr., Circuit Court Judge

---

Opinion No. 28030
Heard December 12, 2019 – Filed May 19, 2021
Refiled August 18, 2021

---

## REVERSED AND REMANDED

---

J. Lewis Cromer and J. Paul Porter, both of Cromer Babb Porter & Hicks, LLC, of Columbia, for Petitioner.

Rene Stuhr Dukes, of Rosen Rosen & Hagood, LLC, of Charleston, for Respondent Robert Bohnstengel; and Caroline Cleveland, Bob J. Conley, and Emmanuel Joseph Ferguson, all of Cleveland & Conley, LLC, of Charleston, for Respondent Stephanie Spann.

---

**CHIEF JUSTICE BEATTY:**  A civil conspiracy claim brought by Leisel Paradis ("Petitioner") was dismissed by the circuit court for failing to plead special damages, and the dismissal was upheld by the court of appeals.  We granted a petition for a writ of certiorari to consider the narrow question whether South Carolina's requirement of pleading special damages should be abolished.  We conclude that it should.  South Carolina is the only state with this unique requirement as an element, and we find it resulted from a misinterpretation of law.  We overrule precedent that requires the pleading of special damages and return to the traditional definition of civil conspiracy in this state.  Consequently, we reverse the decision of the court of appeals and remand the matter to the circuit court for proceedings consistent with this opinion.

## I.  FACTS

Petitioner, a teacher, filed a complaint asserting a defamation claim against the Charleston County School District and James Island Charter High School (respectively, "the District" and "the High School").  In addition, Petitioner asserted a civil conspiracy claim against the High School's principal and assistant principal, Robert Bohnstengel and Stephanie Spann ("Respondents"),[1] in their individual capacities.  Petitioner alleged Respondents targeted her for an unwarranted and invasive performance evaluation because they were unhappy with her desire to report a student's misconduct to the police, causing her to be blacklisted and ostracized and, ultimately, terminated from her teaching position.

The circuit court dismissed both the defamation and the civil conspiracy claims.  The circuit court ruled, *inter alia*, that Petitioner failed to plead special damages as required to advance her civil conspiracy claim.  The court of appeals affirmed.  *Paradis v. Charleston Cty. Sch. Dist.*, 424 S.C. 603, 819 S.E.2d 147 (Ct. App. 2018).  Petitioner sought a writ of certiorari, raising several issues regarding the civil conspiracy claim.  This Court granted the petition for a writ of certiorari as to Petitioner's first question, which asks the Court to abolish the rule imposing a special pleading requirement for civil conspiracy claims—i.e., requiring a plaintiff to plead special damages—which evolved after the Court's decision in *Todd v. South*

---

[1] The District and the High School participated in the appeal below and filed a response to the petition for a writ of certiorari.  However, they did not file briefs with this Court, presumably because they were not parties to the civil conspiracy action that is the subject of the appeal to this Court.  As a result, "Respondents" shall be used to refer to the individual parties who submitted briefs, Bohnstengel and Spann.

*Carolina Farm Bureau Mutual Insurance Co.*, 276 S.C. 284, 278 S.E.2d 607 (1981). This pleading requirement has been informally referred to as the *Todd* rule.

## II.  DISCUSSION

Petitioner contends this Court should overrule precedent requiring the pleading of special damages for civil conspiracy claims, which arose after the issuance of the *Todd* decision in 1981.  We agree.

Civil conspiracy has long given rise to uncertainty as to its elements and proper application.  *See* 4 James Lockhart, *Cause of Action for Civil Conspiracy*, Causes of Action § 4, at 530 (2d ed. 1994) ("The elements of civil conspiracy are not always defined in exactly the same way.").  Over 100 years ago, a law professor analyzed the emerging action, noting its varying definitions and the distinction between civil and criminal conspiracy, and he distilled the following core principles:

> A combination between two or more persons to accomplish a criminal or unlawful purpose, or some purpose not in itself criminal or unlawful by criminal or unlawful means, subjects the confederates to criminal prosecution; and, if injury ensues to an individual therefrom, it subjects them to a civil action by their victim.

Francis M. Burdick, *Conspiracy as a Crime, and as a Tort*, 7 Colum. L. Rev. 229, 246 (1907).

South Carolina employed similar language in defining civil conspiracy.  In an early case involving motions to strike and to make the pleadings for civil conspiracy more definite and certain, this Court stated:

> [A] definition of conspiracy has been given as the conspiring together to do an unlawful act to the detriment of another or the doing of a lawful act in an unlawful way to the detriment of another.

*Charles v. Texas Co.*, 192 S.C. 82, 101, 5 S.E.2d 464, 472 (1939) (*Charles I*).

The Court reiterated this description in the appeal from the verdict in the same case, finding no error in a jury charge defining a civil conspiracy in these terms.  *See Charles v. Texas Co.*, 199 S.C. 156, 176, 18 S.E.2d 719, 727 (1942) (*Charles II*)

("Ordinarily a conspiracy is where two or more persons combine or agree to do something to the detriment or hurt of another.  If they agree to do an unlawful thing for the detriment or hurt of another or if they agree to do a lawful thing but agree to do it in an unlawful manner that would be a conspiracy."); *cf. Hosp. Care Corp. v. Commercial Cas. Ins. Co.*, 194 S.C. 370, 387, 9 S.E.2d 796, 803–04 (1940) (observing "the second cause of action [failed to] allege the required elements of a conspiracy to accomplish an unlawful purpose or a lawful purpose unlawfully").

In *Charles II*, the Court pointed out the "well known principle" that resulting damages are the gist of any civil conspiracy action and an unexecuted conspiracy does not give rise to a civil cause of action.  199 S.C. at 177, 18 S.E.2d at 727.  Thus, the Court emphasized that proof of an overt act and resulting damages were also fundamental elements to sustain a civil claim, and it found these points were adequately conveyed in the trial judge's instructions.  The Court further explained, "Each conspirator is liable for all damages naturally resulting from any wrongful act of a co-conspirator in exercising the joint enterprise," and "[w]hether the damages proximately resulted from the wrongful act of the conspirators is ordinarily a question for the jury."  *Id.* at 174, 18 S.E.2d at 726 (citation omitted).

Appeals involving civil conspiracy were somewhat infrequent immediately following *Charles I* and *Charles II*, but the two decisions were recognized as authoritative, even when later cases did not fully articulate all of the requisite elements.  *See, e.g.*, *Lakewood Water Co. v. Garden Water Co.*, 222 S.C. 450, 453, 73 S.E.2d 720, 721 (1952) ("The two decisions of *Charles v. Texas Company*, 192 S.C. 82, 5 S.E.2d 464, and *Id.*, 199 S.C. 156, 18 S.E.2d 719, rather fully enunciate the principles which govern civil actions for conspiracy and they need not be repeated here.").

The definition of civil conspiracy approved in *Charles I* and *Charles II* is also fairly universal in contemporary tort law.[2]  *See generally* 16 Am. Jur. 2d *Conspiracy* § 53 (2020) ("Although stated variously from jurisdiction to jurisdiction, the basic elements of a civil conspiracy are (1) an agreement between two or more individuals,

---

[2] Most states provide by common law for the claim, and a few states have also enacted statutes in this regard.  *See* 54 James L. Buchwalter, *Cause of Action for Civil Conspiracy*, Causes of Action § 2, at 603 (2d ed. 2012) ("Civil conspiracy is a claim recognized under the common law of most states.  A civil conspiracy may also be actionable under state statutes specifically forbidding various types of concerted action for certain purposes." (citation omitted)).

(2) to do an unlawful act or to do a lawful act in an unlawful way, (3) resulting in injury to [the] plaintiff inflicted by one or more of the conspirators, and (4) pursuant to a common scheme."); 15A C.J.S. *Conspiracy* § 4 (2012) ("The requisite elements [for civil conspiracy] are: (1) a combination between two or more persons; (2) to do a criminal or an unlawful act, or a lawful act by criminal or unlawful means; (3) an act done by one or more of the conspirators pursuant to the scheme and in furtherance of the object; (4) which act results in damage to the plaintiff.").

In 1981, however, the Court issued the *Todd* decision, which has been interpreted as creating a new element for civil conspiracy claims in South Carolina— a requirement that a plaintiff plead special damages. In *Todd*, the plaintiff alleged five causes of action stemming from the termination of his employment, and each cause of action incorporated all of the prior allegations: "(1) intentional interference with contractual relations, (2) extreme and outrageous conduct, (3) bad faith termination of the employment contract, (4) invasion of privacy, and (5) conspiracy to so damage the plaintiff." *Todd v. S.C. Farm Bureau Mut. Ins. Co.*, 276 S.C. 284, 287, 278 S.E.2d 607, 608 (1981). One of the issues considered by the Court was whether Todd's fifth cause of action stated a claim for civil conspiracy. *Id.* at 292, 278 S.E.2d at 610.

The *Todd* Court began by citing, *inter alia*, *Charles I*, and stating: "Conspiracy is the conspiring or combining together to do an unlawful act to the detriment of another or the doing of a lawful act in an unlawful way to the detriment of another." *Id.* at 292, 278 S.E.2d at 611. The Court generally observed the difference between a criminal conspiracy and a civil conspiracy is that the agreement is the gravamen of the offense of criminal conspiracy, whereas "the gravamen of the tort [of civil conspiracy is] the damage resulting to [the] plaintiff from an overt act done pursuant to the common design." *Id.* (citing a former version of *Corpus Juris Secundum*).[3] The Court reiterated that a civil conspiracy becomes actionable only once overt acts occur that proximately cause damage to the plaintiff; therefore, "conspiracy in and of itself is not a civil wrong." *Id.* (citation omitted).

The Court found Todd did not plead overt acts in furtherance of the conspiracy, so the complaint failed to state a claim for civil conspiracy as a matter of law:

---

[3] Similar language is in the updated version. *See* 15A C.J.S. *Conspiracy* § 104 (2012) (distinguishing civil and criminal conspiracy).

As noted, the fifth cause of action does no more than incorporate the prior allegations and then allege the existence of a civil conspiracy and pray for damages resulting from the conspiracy. *No additional acts in furtherance of the conspiracy are plead.* The only alleged wrongful acts plead are those for which damages have already been sought. . . .

The trial judge erred by overruling the demurrer to the conspiracy cause of action in the complaint, since Todd can recover no additional damages for the alleged fifth cause of action. The rule applicable to these pleadings is stated at 15A C.J.S. Conspiracy § 33, at 718.

> "Where the particular acts charged as a conspiracy are the same as those relied on as the tortious act or actionable wrong, plaintiff cannot recover damages for such act or wrong, and recover likewise on the conspiracy to do the act or wrong."

Todd seeks damages in his first four causes of action *for the same acts* incorporated by the fifth cause. He is therefore precluded from seeking damages *for the same acts yet again.* As such, the fifth cause fails to state an action.

*Id.* at 293, 278 S.E.2d at 611 (emphasis added). Although *Todd* ostensibly spoke in terms of the failure to plead *additional acts* to support the civil conspiracy claim and not allowing duplicative recoveries for the same acts, cases after *Todd* began enumerating three required elements to assert an allegation of civil conspiracy, including the element of pleading "special damage":

> A civil conspiracy . . . consists of three elements: (1) a combination of two or more persons, (2) for the purpose of injuring the plaintiff, (3) which causes him special damage.

*Lee v. Chesterfield Gen. Hosp., Inc.*, 289 S.C. 6, 10, 344 S.E.2d 379, 382 (Ct. App. 1986); *accord Island Car Wash, Inc. v. Norris*, 292 S.C. 595, 600, 358 S.E.2d 150,

152 (Ct. App. 1987) (citing *Lee* and its three-part definition of civil conspiracy); *Yaeger v. Murphy*, 291 S.C. 485, 487, 354 S.E.2d 393, 394 (Ct. App. 1987) (citing the definition in *Lee*).

While the requirement of pleading special damages became known as the *Todd* rule, notably none of the foregoing cases (*Lee*, *Island Car Wash*, and *Yaeger*) specifically cited *Todd* for the three-part definition of civil conspiracy incorporating this element. *Island Car Wash* and *Yaeger* relied solely on the definition in *Lee* and did not cite *Todd* for any legal proposition. *Lee* did cite *Todd*, but it was in the context of distinguishing civil and criminal conspiracy and reiterating the need to show an overt act and resulting damage for a civil claim.

In *Lee*, the court of appeals indicated the parties had confused civil and criminal conspiracy. 289 S.C. at 10, 344 S.E.2d at 381. The court stated the definition involving an agreement to undertake "an unlawful act or a lawful act by unlawful means" defined only a criminal conspiracy, and instead enumerated a three-part test for a civil action—"(1) a combination of two or more persons, (2) for the purpose of injuring the plaintiff, (3) which causes him special damage." *Id.* at 10, 344 S.E.2d at 382. In doing so, it cited this Court's decision in *Charles I,* along with a 1915 Tennessee decision and several United Kingdom cases.[4] *Id.*

We note this Court's precedent demonstrates the definitional elements of civil conspiracy actually parallel the elements of criminal conspiracy.[5] *See Bradley v. Kelley Bros. Contractors*, 117 So. 3d 331, 339 (Miss. Ct. App. 2013) (observing the elements of criminal conspiracy and civil conspiracy "are quite similar" and noting

---

[4] While the United Kingdom cases have some efficacy, we do not find them determinative of South Carolina law. In particular, we note some of the decisions consist of a collection of individual determinations, with each individual expressing his own, singular opinion. Although such decisions reach one ultimate result, they are not all in agreement in their reasoning.

[5] *See* S.C. Code Ann. § 16-17-410 (2015) ("The common law crime known as 'conspiracy' is defined as a combination between two or more persons for the purpose of accomplishing an unlawful object or lawful object by unlawful means."); *see also State v. Davis*, 88 S.C. 229, 232, 70 S.E. 811, 812–13 (1911) ("[T]he description which seems to have the widest recognition and approval by the authorities declare a criminal conspiracy to consist of a combination between two or more persons for the purpose of accomplishing a criminal or unlawful object, or an object neither criminal nor unlawful by criminal or unlawful means." (citation omitted)).

civil conspiracy turns on the existence of damages). The similarity is logical because the major difference between civil and criminal conspiracy is a plaintiff's need to additionally prove an overt act and resulting damages to obtain a civil recovery. *See* 16 Am. Jur. 2d *Conspiracy* § 53 (2020) ("The elements of civil conspiracy are quite similar to those required of a criminal conspiracy, with the distinguishing factor being that an agreement is the essence of a criminal conspiracy, while damages are the essence of a civil conspiracy."); *id.* § 55 ("The gist of a civil conspiracy is not the unlawful agreement or combination but *the damage caused by the acts committed in pursuance* of the formed conspiracy." (emphasis added)); *see also* 15A C.J.S. *Conspiracy* § 7 (2012) ("Although criminal and civil conspiracy have similar elements, the distinguishing factor between the two is that damages are the essence of a civil conspiracy, and the agreement is the essence of a criminal conspiracy.").[6]

Later cases began reciting *Lee*'s three-part test for civil conspiracy that developed post-*Todd* and which included the requirement of pleading special damages. *See LaMotte v. Punch Line of Columbia, Inc.*, 296 S.C. 66, 370 S.E.2d 711 (1988); *see also Pye v. Estate of Fox*, 369 S.C. 555, 633 S.E.2d 505 (2006); *McMillan v. Oconee Mem'l Hosp., Inc.*, 367 S.C. 559, 626 S.E.2d 884 (2006); *Lawson v. S.C. Dep't of Corr.,* 340 S.C. 346, 532 S.E.2d 259 (2000); *Future Group II v. NationsBank*, 324 S.C. 89, 478 S.E.2d 45 (1996); *Hackworth v. Greywood at Hammett, LLC*, 385 S.C. 110, 682 S.E.2d 871 (Ct. App. 2009). Inexplicably, this new requirement for special damages was labeled the *Todd* rule.

Although the Court did not mention "special damages" in *Todd*, several years after *Todd* a few cases, such as *Lee*, 289 S.C. at 10, 344 S.E.2d at 382, recited the three-part test for civil conspiracy that appeared to contain the pleading requirement as an element of the claim. This definition, in turn, was then quoted repeatedly by our appellate courts. This pleading requirement became known as the *Todd* rule.

---

[6] In a case discussing criminal conspiracy, this Court has observed that "unlawful" merely means "contrary to law" and is not limited to criminal conduct. *State v. Davis*, 88 S.C. 229, 233, 70 S.E. 811, 813 (1911) ("It is enough if the acts agreed to be done, although not criminal, are wrongful; that is amount to a civil wrong." (citations omitted)). As for civil conspiracy, early English law has noted that, "[i]n view of the infinite variations of oppressive misconduct[,] no definition [of "unlawful means"] can be given which is at once satisfactory and exhaustive." *Pratt v. Brit. Med. Ass'n*, [1919] 1 K.B. 244, 260 (1918). However, *Pratt* stated precedent recognized that violence or threats of physical violence, threats not involving physical harm, nuisance, and fraud, are readily encompassed, although they are not the only examples. *See id.* at 260–61.

*See, e.g.*, *Vaught*, 300 S.C. at 209, 387 S.E.2d at 95 ("hold[ing] the conspiracy action is barred under *Todd*" where special damages were not properly alleged). However, the pleading requirement's relationship to *Todd* is rendered somewhat tenuous because, as previously noted, the earliest cases did not specifically cite *Todd* for this requirement. *See, e.g.*, *Island Car Wash*, 292 S.C. at 600, 358 S.E.2d at 152; *Yaeger*, 291 S.C. at 487, 354 S.E.2d at 394.

This test resulted in the dismissal of civil conspiracy actions that did not expressly plead special damages on the basis they failed to adequately allege a cause of action. South Carolina courts held that, because special damages are a required element of a civil conspiracy claim, a plaintiff must plead special damages that go beyond the damages alleged in other claims to state a cause of action. Those cases further stated that, if a plaintiff merely repeated the damages from another claim without specifically listing special damages as part of the civil conspiracy allegation, then the civil conspiracy action must be dismissed. *See, e.g.*, *Hackworth*, 385 S.C. at 117, 682 S.E.2d at 875 ("If a plaintiff merely repeats the damages from another claim *instead of specifically listing special damages* as part of their civil conspiracy claim, their conspiracy claim should be dismissed." (emphasis added)); *Vaught v. Waites*, 300 S.C. 201, 209, 387 S.E.2d 91, 95 (Ct. App. 1989) ("The damages sought in the conspiracy cause of action are the same as those sought in the breach of contract cause of action. Because no special damages are alleged aside from the breach of contract damages, we hold the conspiracy action is barred under *Todd*.").[7]

We granted Petitioner's motion to argue against the *Todd* rule in the current case, where her civil conspiracy claim was dismissed at the pleadings stage for the failure to plead special damages.[8] Petitioner contends the requirement of pleading special damages for civil conspiracy should be abandoned because it resulted from,

---

[7] The law requiring the dismissal of a civil conspiracy claim for failing to plead special damages has also been cited in federal courts applying South Carolina law. *See, e.g.*, *Callum v. CVS Health Corp.*, 137 F. Supp. 3d 817 (D.S.C. 2015); *Alonso v. McAllister Towing of Charleston, Inc.*, 595 F. Supp. 2d 645 (D.S.C. 2009).

[8] The *Todd* rule requiring the pleading of special damages was previously called into question in another case before this Court, but we declined to abandon the rule at that time because a trial had been held some twelve years prior in that matter, and there was concern that it would be unfair to change the requirements for pleadings and proof upon remand, given the age of the case. *See Allegro, Inc. v. Scully*, 418 S.C. 24, 34 n.3, 791 S.E.2d 140, 145 n.3 (2016).

*inter alia*, a misreading of *Corpus Juris Secundum*. We agree the *Todd* rule should be abolished.

In *Todd* the Court cited 15A C.J.S *Conspiracy* § 33 and held a plaintiff in a civil conspiracy action must allege acts in furtherance of the conspiracy. The Court noted the only wrongful acts alleged were those for which damages had already been sought, so the claim failed as a matter of law. This was taken in cases after *Todd* as imposing a requirement of pleading (and proving) special damages for a civil conspiracy claim. We find this section of *Corpus Juris Secundum* simply addressed a prohibition on duplicative recoveries; it did not establish a requirement of pleading special damages for civil conspiracy claims. The plaintiff in *Todd* failed to plead any overt acts in furtherance of the conspiracy. Thus, the Court correctly concluded the civil conspiracy claim failed as a matter of law. In that situation, the Court noted, the plaintiff's repetition of the same acts as the prior claims was insufficient to salvage the claim.

We note that, in addition to perhaps resulting from a misinterpretation of *Corpus Juris Secundum* and *Todd*, the pleading requirement for civil conspiracy also perhaps resulted, at least in part, from differing interpretations of the term "special damages." Traditionally, general damages are implied by law and can be alleged without particularity because they are the proximate and foreseeable consequences of the defendant's conduct. Special damages, in contrast, are those that might be the natural result of an injury, but not the necessary or usual consequences of the defendant's conduct, and they typically are unique to a particular case. *See* 5A Charles Alan Wright, Arthur R. Miller & A. Benjamin Spencer, *Federal Practice and Procedure* § 1310 (4th ed. 2018) (distinguishing general and special damages). Under the South Carolina Rules of Civil Procedure ("SCRCP") and under the federal procedural rules, special damages must be specifically pled to avoid surprise and give notice to the opposing party. *See, e.g.*, Rule 9(g), SCRCP.

In this context, however, it seems South Carolina precedent has varied in what it considers "special damages." *See generally* Michael G. Sullivan, *Elements of Civil Causes of Action* 89–90 (5th ed. 2015, Douglas MacGregor, ed.) ("The requirement that the plaintiff plead special damages means essentially this - that the complaint must describe damages that occurred as a result of the conspiracy in *addition* to any alleged as a result of other claims."). *But see Hackworth*, 385 S.C. at 116–17, 682 S.E.2d at 875 ("Special damages are those elements of damages that are the natural, but not the necessary or usual, consequence of the defendant's conduct. . . . Special damages . . . are not implied at law because they do not necessarily result from the wrong. Special damages must, therefore, be specifically alleged in the complaint to

avoid surprise to the other party." (internal citation omitted)).  We further note the SCRCP, which require that special damages be specifically pled, were not in effect at the time *Todd* was decided.

The essential principle *Todd* intended to address was the need to plead an overt act in furtherance of the agreement, not special damages.  As a result, we overrule *Todd* and cases relying on *Todd* or other precedent, such as *Lee*, to the extent they impose or appear to impose a requirement of pleading (and proving) special damages.  South Carolina's position in this regard was an outlier, as our research indicates South Carolina was the only state to require the pleading of special damages.

In light of our decision today, we are returning to our long-standing precedent pre-*Todd* and for clarification specifically state a plaintiff asserting a civil conspiracy claim must establish (1) the combination or agreement of two or more persons, (2) to commit an unlawful act or a lawful act by unlawful means, (3) together with the commission of an overt act in furtherance of the agreement, and (4) damages proximately resulting to the plaintiff.[9]  *See Charles II*, 199 S.C. at 176, 18 S.E.2d at 727; *Charles I*, 192 S.C. at 101, 5 S.E.2d at 472; *see also* 16 Am. Jur. 2d *Conspiracy* § 53 (2020) (enumerating the prevailing elements of a claim for civil conspiracy recognized in most jurisdictions); 15A C.J.S. *Conspiracy* § 4 (2012) (same).  By doing so, we are returning not only to our historical roots, but also to the traditional elements of a civil conspiracy claim as they have been similarly defined by the majority of jurisdictions.[10]

---

[9]  Since civil conspiracy is an intentional tort, an intent to harm, which has also been discussed in our conspiracy law, remains an inherent part of the analysis.  *See* 16 Am. Jur. 2d Conspiracy § 53 (2020) ("Since one cannot agree, expressly or tacitly, to commit a wrong about which they have no knowledge, in order for civil conspiracy to arise, the parties must be aware of the harm or wrongful conduct at the beginning of the combination or agreement.  Thus, civil conspiracy is an intentional tort requiring a specific intent to accomplish the contemplated wrong." (footnotes omitted)).

[10] Most states incorporate the elements of an agreement to do an unlawful act or a lawful act by unlawful means (or the common variation of an unlawful purpose or a lawful purpose by unlawful means).  *See, e.g.*, *Harp v. King*, 835 A.2d 953, 972 (Conn. 2003); *Mustaqeem-Graydon v. SunTrust Bank*, 573 S.E.2d 455, 461 (Ga. Ct. App. 2002); *Yoneji v. Yoneji*, 354 P.3d 1160, 1168 (Haw. Ct. App. 2015); *Hall v. Shaw*, 147 N.E.3d 394, 407–08 (Ind. Ct. App. 2020); *Coghlan v. Beck*, 984 N.E.2d

We disagree with the concurring/dissenting opinion to the extent it goes beyond the sole question accepted by this Court—which asks, "Should the Court reverse the special damages pleading requirement on civil conspiracy claims arising from Todd v. S.C. Farm Bureau Mut. Ins. Co.?"— and appears to consider a point raised by Respondents in their brief. Namely, whether civil conspiracy itself should be "abolished" as an independent claim in this state and should, instead, always be dependent on an underlying actionable wrong or tort. Respondents have not cross-appealed in this matter, and we reject Respondents' attempt to advance this issue for the first time on appeal. Any further arguments potentially affecting the viability of Petitioner's claim, whether they arise from this Court's decision or otherwise, are properly raised upon remand to the circuit court, in the first instance, particularly where the case was halted at the pleadings stage.

We note a few jurisdictions recognize two forms of civil conspiracy. The first, which is the general rule, requires an underlying actionable wrong or tort, and liability is imposed on an individual for the tort of another. A second form, also described as an exception to the general rule, exists when the conduct complained of would not be actionable if done by one person, but where by force of numbers or other exceptional circumstances, the defendants possess a peculiar power of coercion that gives rise to an independent tort of civil conspiracy (often referred to as the "force of numbers" or "economic boycott" exception). *See Am. Diversified Ins. Servs., Inc. v. Union Fid. Life Ins. Co.*, 439 So. 2d 904 (Fla. Dist. Ct. App. 1983); *Baker v. Wilmer Cutler Pickering Hale & Dorr LLP*, 81 N.E.3d 782 (Mass. App. Ct. 2017); *see also Schmitt v. MeritCare Health Sys.*, 834 N.W.2d 627, 635 (N.D. 2013)

---

132, 151 (Ill. App. Ct. 2013); *Peoples Bank of N. Ky., Inc. v. Crowe Chizek & Co.*, 277 S.W.3d 255, 260–61 (Ky. Ct. App. 2008); *Franklin v. Erickson*, 146 A. 437, 438 (Me. 1929); *Shenker v. Laureate Educ., Inc.*, 983 A.2d 408, 428 (Md. 2009); *Swain v. Morse*, No. 346850, 2020 WL 3107696, at *7 (Mich. Ct. App. June 11, 2020); *Bradley v. Kelley Bros. Contractors*, 117 So. 3d 331, 339 (Miss. Ct. App. 2013); *Envirotech, Inc. v. Thomas*, 259 S.W.3d 577, 586 (Mo. Ct. App. 2008); *George Clift Enters., Inc. v. Oshkosh Feedyard Corp.*, 947 N.W.2d 510, 537 (Neb. 2020); *Jay Edwards, Inc. v. Baker*, 534 A.2d 706, 709 (N.H. 1987); *Banco Popular N. Am. v. Gandi*, 876 A.2d 253, 263 (N.J. 2005); *In re Fifth Third Bank, N.A.*, 719 S.E.2d 171, 181 (N.C. Ct. App. 2011); *Schmitt v. MeritCare Health Sys.*, 834 N.W.2d 627, 635 (N.D. 2013); *Phillips v. Selig*, 959 A.2d 420, 437 (Pa. Super. Ct. 2008); *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 703 (Tenn. 2002); *Pohl, Inc. of Am. v. Webelhuth*, 201 P.3d 944, 954–55 (Utah 2008); *Wilson v. State*, 929 P.2d 448, 459 (Wash. Ct. App. 1996); *N. Highland Inc. v. Jefferson Mach. & Tool, Inc.*, 898 N.W.2d 741, 747 (Wis. 2017).

(observing "[s]ome courts have applied an 'economic boycott' or 'force of numbers' exception to the general rule that the basis for a civil conspiracy must be an independent wrong or tort," but not deciding whether to adopt the exception in that state because it would not be applicable, in any event). Early South Carolina law pre-*Todd* appeared to reference similar concepts. *See, e.g.*, *Howle v. Mountain Ice Co.*, 167 S.C. 41, 58, 165 S.E. 724, 729 (1932); *Charles II*, 199 S.C. at 170, 18 S.E.2d at 724. However, to rule on whether this Court has or ever will recognize an exception to the general rule would require the Court to issue an advisory opinion on a distinct subject that has not yet been disputed in this case.

## III. CONCLUSION

Because the court of appeals upheld the dismissal of Petitioner's civil conspiracy claim based on the failure to plead special damages, we reverse and remand the matter to the circuit court for further proceedings on Petitioner's claim for civil conspiracy. Our decision in Petitioner's case is based solely on the narrow question before the Court regarding the abolishment of the *Todd* rule, and we do not reach any other issue concerning the viability or merits of Petitioner's claim. Any other cases on appeal that have already been tried under the *Todd* framework shall be decided using the *Todd* analysis.

**REVERSED AND REMANDED.**

**HEARN and JAMES, JJ., concur. KITTREDGE, J., concurring in result in a separate opinion. FEW, J., concurring in part and dissenting in part in a separate opinion.**

**JUSTICE KITTREDGE:**  I concur in result.  In overruling the so-called "special damages" requirement of *Todd v. South Carolina Farm Bureau Mutual Insurance Co.*,[11] the Court must necessarily examine the elements of civil conspiracy.  I commend Chief Justice Beatty for his excellent opinion, which tracks this Court's meandering civil conspiracy jurisprudence and properly restores the elements of a civil conspiracy claim to its original understanding.  As a result of today's opinion, it is again settled that a civil conspiracy claim requires proof of (1) the combination or agreement of two or more persons, (2) to commit an unlawful act or a lawful act by unlawful means, (3) together with the commission of an overt act in furtherance of the agreement, and (4) damages proximately resulting to the plaintiff.  Stated differently, we have abandoned the standardless formulation that required only (1) a combination of two or more persons, (2) for the purpose of injuring the plaintiff, and (3) which caused the plaintiff special damage.  I write separately to address the effect of *Todd* on the election of remedies and note my support for the concurrence of Justice Few.

First, in my judgment, *Todd* is more properly viewed as an election of remedies case, not a pleading case.  *Todd* created a fiction that special damages caused by the civil conspiracy were somehow different than the damages caused by the underlying unlawful conduct.  That misunderstanding, in turn, led to a misapplication of our election of remedies law.  Because a civil conspiracy claim was purportedly supported by special damages, some trial courts would avoid an election of remedies and permit a double recovery.  Today's rejection of a special damages requirement should restore a proper approach to election of remedies.  For one wrong, there is one recovery.

Next, I view Justice Few's concurrence as well within the question accepted by this Court for review.  The misguided pleading rule that grew out of *Todd* spawned a series of cases that further separated civil conspiracy from its original moorings.  Justice Few compellingly frames the amorphous nature of the civil conspiracy cause of action that resulted from *Todd* and its progeny.  It is the second element—to commit an *unlawful act* or a lawful act by *unlawful means*—that restores an objective legal standard to this cause of action.  When the appellate courts of this state approved of an analytical framework that allowed one's personal sense of fairness and right and wrong to be sufficient for a civil conspiracy claim, we created a rudderless cause of action.  Justice Few correctly observes that the post-*Todd*

---

[11] 276 S.C. 284, 278 S.E.2d 607 (1981).

sanctioned civil conspiracy claim "permit[ted] the court and jury to impose liability for lawful, non-tortious conduct based on a court or juror's sense of fairness or responsibility."  I do not construe Justice Few's concurrence as "abolishing" civil conspiracy.  Rather, by restoring the traditional elements of a civil conspiracy claim and overruling *Todd*'s so-called special damages pleading requirement, this Court returns civil conspiracy to its historical roots.  Because the Court has reset the elements of civil conspiracy and restored an objective standard, I would apply today's decision prospectively with one exception: for those cases that were tried under the *Todd* rubric and are on appeal now, I would evaluate the merits of the appeal under the *Todd* framework.

**JUSTICE FEW:** I agree with the majority that the requirement of pleading and proving special damages in a civil conspiracy action is based on a misunderstanding of law, and the requirement must be eliminated. To that extent, I concur in the majority opinion. However, the special damages requirement we now hold legally invalid previously served the valid practical purpose of restraining the use of the undefined civil conspiracy cause of action. In almost all legitimate civil actions, there are no "special damages" as that term was used in civil conspiracy. In other words, it was hardly ever possible to allege or prove "damages that go beyond the damages alleged in other causes of action." As a practical matter, therefore, the requirement of special damages prevented civil conspiracy from being a significant cause of action in civil litigation. Now, any plaintiff may bring a civil conspiracy action against any defendant—even for lawful, non-tortious conduct—and the law imposes no meaningful standards on courts and juries by which they must judge the defendant's conduct. I disagree with the majority that we should unleash this still-undefined and now-unrestrained menace on the public as an independent tort. To that extent, I respectfully dissent.

Certainly, civil conspiracy is a proper cause of action in its derivative form. If two people conspire to commit fraud, for example, but the actual fraudulent conduct is carried out by only one of them, the injured plaintiff should be able to sue both of them. The law imposes specific requirements a plaintiff must meet for a fraud cause of action, and those requirements provide standards by which courts and juries must judge the conduct of both defendants. The same is true for defamation, one of the plaintiff's theories of recovery in this case. If one defendant who did not personally commit defamatory acts conspired with another who did defame the plaintiff, the legal elements the plaintiff must establish in a defamation case—along with the legal requirements for conspiracy—guide the court and the jury in deciding whether the conspirator should also be liable for defamation.

As an independent tort, however, the undefined theory of civil conspiracy leaves courts and juries free to determine civil liability—both of the alleged tortfeasor and the supposed conspirator—not based on the law, but by using the individual judge or juror's sense of fairness or responsibility. Imagine in a fraud case that the dispute arose out of business competition between the plaintiff and the defendant. The defendant intentionally made a false statement to the plaintiff for the purpose of gaining competitive advantage. Imagine further the plaintiff's fraud cause of action fails because the court or the jury finds—applying the law—the plaintiff had no right to rely on the false statements. The defendant's conduct might have been unfair or

irresponsible, but the plaintiff loses on the fraud claim—rightfully—because the law does not support the claim.

If, however, the plaintiff's lawyer thought to add a cause of action for civil conspiracy, the plaintiff might nevertheless prevail because the independent tort of civil conspiracy has no specific requirements, elements, or standards to guide the court and jury. Civil conspiracy—as the majority "return[s] . . . to our historical roots"—permits the court and jury to impose liability for lawful, non-tortious conduct.

We need not imagine how a defamation claim could unfold; we can turn to the plaintiff's allegations in this case. The plaintiff alleged in her complaint the principal of the school where she taught became angry when she asked him to report a student to the police for disruptive behavior in her classroom. She claimed the principal retaliated against her by placing her into a formal job evaluation process she did not deserve and her conduct did not warrant. By the time the evaluation results were reported, the principal was no longer involved, both because he did not participate in the evaluations and because he was no longer employed at the school. She claimed statements made about her during the evaluation process—not by the principal—defamed her as being a bad teacher. On a derivative claim for conspiracy to commit defamation, the principal would have the defenses of truth, fair reporting privilege, the two-year statute of limitations for defamation,[12] and perhaps others. If the statements made by those conducting the evaluation were true or fair, or if the claim was brought outside the limitations period, the principal—like those who made the defamatory remarks—would rightfully benefit from those legally defined defenses.

---

[12] *See* S.C. Code § 15-3-550(1) (2005) (requiring "an action for libel [or] slander" be brought "[w]ithin two years"). The General Assembly, in enacting subsection 15-3-550(1), made a policy judgment that defamation actions must be brought in a shorter time than the general limitations period of three years set forth in section 15-3-530 of the South Carolina Code (2005). In this case, the defendants prevailed on the statute of limitations defense as to the plaintiff's defamation claims. By now permitting the plaintiff to sue for the very same conduct—defamation—outside the limitations period for defamation cases—simply because the defamation claim is labeled as civil conspiracy—the majority frustrates the General Assembly's intent to require defamation cases be brought within two years.

The plaintiff's lawyer in this case did think to add a cause of action for civil conspiracy. Thus, on the majority's remand for trial, the plaintiff might nevertheless prevail because the independent tort of civil conspiracy has no specific requirements, elements, or standards to guide the court and jury. Defamation defenses do not apply to civil conspiracy, which—as confirmed by the majority to be an independent tort— permits the court and jury to impose liability for lawful, non-tortious conduct based on a court or juror's sense of fairness or responsibility. In other words, the civil conspiracy claim we remand for trial permits a court and jury to impose liability for defamation despite the fact the law provides valid defenses that prevent liability.

My point is illustrated by a case I tried years ago when I was a circuit judge. I have modified the facts slightly for simplicity. In an aging twenty-four unit condominium building in a beachfront city here in South Carolina, owners could sell individual units for an average of $250,000. A real estate developer believed he could renovate the building and sharply increase the value of each unit. The developer offered to purchase each unit for $400,000 on the condition that each of the twenty-four owners must sell. The owners realized their units were undervalued; they predicted that even this offer was less than full value; and they decided to seek competing offers from other developers. After receiving a superior offer from a second developer, and a counter offer from the first, the owners voted to accept the offer from the second developer. Twenty-three of them entered contracts to sell their units to the second developer.

The first developer—understandably—did not give up. He had figured out a way to bring a combined financial benefit of $3.6 million ($150,000 each) to the twenty-four unit owners, to renovate an aging building in the city, to employ quite a few people in the renovation and resale process, and to make a considerable profit for himself. He knew the condominium owners' association by-laws did not permit a sale or renovation of the entire building on less than a unanimous vote. Thus, he knew the second developer could not complete the deal without successfully purchasing all twenty-four units. So, the first developer approached one of the unit owners and purchased that individual unit for $600,000. By doing so, he placed himself back in control of the deal he had conceived.

Everybody was furious with the first developer, and they all sued him on every conceivable cause of action. The breach of contract claim failed because the developer had no contract with anyone except the one owner who sold to him. The breach of fiduciary duty claim failed because the developer owed no such duty. The

fraud and slander of title claims failed because the developer made no false statement. The intentional interference with a contract claim failed because the developer was justified in purchasing real estate to further his own financial interests. The interference with prospective contractual rights claim failed because the unit owners had a contract to sell to the second developer, not prospective contractual rights. I dismissed each of those claims because—applying the law—the plaintiffs had no right to recover from the developer. Nothing was left, except civil conspiracy.

In a hearing on the developer's motion for a directed verdict, the plaintiffs acknowledged the developer's actions were lawful. Quoting, however, from this Court's opinion in *LaMotte v. Punch Line of Columbia, Inc.*, 296 S.C. 66, 70, 370 S.E.2d 711, 713 (1988), the plaintiffs argued "lawful acts may become actionable as a civil conspiracy when the 'object is to ruin or damage the business of another,'" and, "An action for civil conspiracy may exist even though respondents committed no unlawful act and no unlawful means were used."

The plaintiffs' arguments were facially correct. The first developer intentionally conspired with the owner of one unit for the purpose of preventing the other twenty-three owners from realizing the extra value in their units, and for the purpose of preventing the second developer from profiting from renovation of the building and resale of the renovated units. Yet, I granted a directed verdict on the civil conspiracy claim. I did so because the law should never permit a court or a jury to impose civil liability for lawful, non-tortious conduct. Without specific requirements, elements, or standards, the decision maker is left with nothing but its own sense of what is fair or responsible. That is neither fair nor responsible.

In our free-enterprise economy, we encourage entrepreneurs to use aggressive tactics to seize competitive advantage, create jobs for our people, and build value for our communities. For these efforts, entrepreneurs rightfully expect to earn handsome profits. Participants in this healthy competition use every lawful tactic at their disposal. Those who lose out are understandably envious, and often angry. But, actions that conform to the law—even when motivated by anger or an intent to harm—must not be the basis of civil liability. As the Supreme Court of the United States admonished 160 years ago,

> An act legal in itself, and violating no right, cannot be made actionable on account of the motive which superinduced it. It is the province of ethics to consider of

actions in their relation to motives, but jurisprudence deals with actions in their relation to law . . . .

*Adler v. Fenton*, 65 U.S. 407, 410, 16 L. Ed. 696, 698 (1860).